# United States District Court
### for the
# Southern District of New York

| | |
|---|---|
| Ward Oles and Patricia Reed, | |
| individually and on behalf of all others similarly situated, | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | Case No.: 1:21-cv-9393 |
| v. | |
| The City of New York, acting through the New York City Police Department and New York City Department of Finance; Mary Gotsopoulis; Jeffrey Shear; and Jane and John Does 1-10, | **JURY TRIAL DEMANDED** |
| Defendants | |

Plaintiffs Ward Oles and Patricia Reed, by and through counsel, bring this Class Action Complaint on behalf of themselves and all others similarly situated against Defendants the City of New York ("NYC" or "the City"), acting through the NYC Department of Finance ("DOF") and NYC Police Department ("NYPD"); Mary Gotsopoulis, Chief Administrative Law Judge of the New York City Department of Finance Adjudications Division a/k/a Parking Violations Bureau; Jeffrey Shear, Deputy Commissioner of the New York City Department of Finance Treasury & Payment Services; and Jane and John Does 1-10, all in their official capacities, alleging upon information and belief, except as to facts and matters that relate to Plaintiffs, which are alleged upon knowledge, as follows.

## PRELIMINARY STATEMENT

1.     Threatening violators with fines and up to "thirty days' *imprisonment*," the City requires permanent and destructive alterations to "every commercial vehicle" parked or operated "on the streets of the city," no matter how briefly, including removal of "all seats . . . except the front seats," and permanent emblazonment of "the name and address of the owner" on both sides of the vehicle.

2.     In addition to violating federal and state law, NYPD's practice of issuing $115 parking tickets for "unaltered commercial vehicle" status violations also violates the same laws Defendants claim to be enforcing, which authorize "a fine of <u>not more than</u> fifty dollars" for unaltered commercial vehicle violations.[1]

3.     The damage effectuated by those acts is further exacerbated by Defendants' official practice and custom of applying the same "commercial vehicle" definition to issue a first $115 ticket for parking an "unaltered *commercial* vehicle"[2] and also issuing a second $115 "companion summons" alleging (impossibly) that the same vehicle is also "*non-commercial* vehicle" illegally parked in a commercial zone.[3]

4.     It is unclear to Plaintiffs, and an objective of this lawsuit, to determine how Defendants could have made a good faith decision to systematically assess excessive fines for

---

[1] N.Y.C. Admin. Code § 10-127(c) (emphasis added); *see also* N.Y.C. Admin. Code § 19-203; N.Y. Veh. & Traf. Law § 237.

[2] Ex. 1, Jul. 6, 2021 Oles Summons No. 8912972996 (alleging "Standing or parking a Commercial Vehicle unless all seats, except the front seats, and rear seat equipment removed. The name and address of the owner must be on the registration certificate plainly marked on both sides of the vehicle in letters and numerals not less than 3 inches in height. (Vehicles with Commercial Plates are considered to be Commercial Vehicles and must be altered accordingly.)"; Violation Code 82 description, <u>https://www1.nyc.gov/site/finance/vehicles/services-violation-codes.page</u> (last accessed Nov. 12, 2021).

[3] Ex. 2, Jul. 6, 2021 Oles Summons No. 8912973009 (alleging "Standing of a non-commercial vehicle in a commercial metered zone"); Violation Code 31 description, <u>https://www1.nyc.gov/site/finance/vehicles/services-violation-codes.page</u> (last accessed Nov. 12, 2021).

objectively impossible conduct and/or alleged violations that permit "not more than fifty dollars" in fines.[4]

5.    Acting pursuant to municipal custom and under color of state law, Defendants have issued tens of millions of dollars in illegal an unconstitutional tickets, excluding interest and other categories of damages sought by this lawsuit, by unlawfully issuing, *inter alia*, more than 250,000 "unaltered commercial vehicle" tickets.

6.    Information regarding jurisdiction, venue, the Parties, standing, additional violations by Defendants, and the forms of relief sought by this action are addressed in turn below.

## JURISDICTION AND VENUE

7.    This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this Court has original jurisdiction over all civil actions arising under the laws of the United States, including 42 U.S.C. § 1983.

8.    This Court has jurisdiction over this action under 28 U.S.C. § 1343(a)(1)-(4), which confers original subject matter jurisdiction in this Court over actions involving the alleged deprivation of civil rights.

9.    This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims arise out of the same nucleus of operative facts as Plaintiffs' federal claims and form part of the same case or controversy.

10.    This Court has jurisdiction over Plaintiffs' claim for declaratory judgment and declaratory relief under 28 U.S.C. §§ 2201 and 2202, as implemented by Rule 57 of the Federal Rules of Civil Procedure.

---

[4] Such fines are often accompanied by additional and substantial penalties, as well as thousands of dollars of damage that class members inflict upon their own vehicles in good faith attempts to comply with NYC's illegal vehicle alteration requirements.

11.    This Court also has subject matter jurisdiction over each claim in this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), as at least one Defendant and one member of the putative class are citizens of different states and Defendants' own parking ticket issuance and fine data confirm the putative class comprises more than 100 members from whom Defendants have collected more than $5 million dollars solely from illegal tickets discussed herein, exclusive of interest, costs, and all other types of damages sought *infra*.

12.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## **IDENTIFICATION OF PARTIES**

### *Plaintiff Ward Oles*

13.    Like many Americans, Plaintiff Ward Oles ("Mr. Oles") drives an unaltered light-duty pickup truck that was and remains properly registered in New York State as a commercial vehicle bearing commercial plates.[5]

14.    On July 6, 2021, Mr. Oles drove into this District to pick up a couch from West Elm's designated curbside pickup location at 119 West 17th Street, New York, NY 10011.

15.    Mr. Oles was not compensated for his assistance in picking up the couch or engaged in any commercial activity in the City.

---

[5] Pickup trucks and other vehicles used strictly for non-commercial purposes are regularly registered with commercial plates in New York, which is encouraged by applicable law, reputable sources, and the Department of Motor Vehicles. "It is normally correct to register a truck as a commercial vehicle, even when it is not used for business." https://nysdmv.custhelp.com/app/answers/detail/a_id/116/~/is-my-vehicle-a-commercial-or-a-passenger-vehicle%3F (last accessed Nov. 6, 2021); "If you drive a pickup, you can always use commercial plates in New York, and there's no requirement to apply for passenger plates. You may find it's easier and makes more sense to simply register your truck as commercial from the very beginning." https://www.poughkeepsiejournal.com/story/sponsor-story/healey-brothers-chrysler-dodge-jeep-ram/2018/03/22/everything-you-need-know-new-york-commercial-vehicle-registration-healey-chrysler/420316002/ (last accessed Oct. 24, 2021).

16.     The pickup truck at issue, which is used by Mr. Oles' family and registered to Mr. Oles' mother, was operated and parked solely by Mr. Oles on July 6, 2021.

17.     As Mr. Oles pulled up to that address, he read signs purporting to summarize the rules for parking at that location, which designated it a zone for parking "COMMERCIAL VEHICLES," and accordingly, parked in that zone for approximately 10 minutes while he expeditiously retrieved and loaded the couch.

18.     While Mr. Oles was retrieving the couch, he received two parking tickets from the same NYPD officer on July 6, 2021 at 4:16 PM and 4:17 PM, which bear Summons Numbers 8912973009 and 8912972996.[6]

19.     Mr. Oles was confused as to why he had received a parking ticket, and further confused when he realized he had received *two* tickets stacked on top of each other which alleged, impossibly, that he had committed a first violation by parking a commercial vehicle, and a second violation by parking a non-commercial vehicle, all at the same time.

20.     Specifically, the first $115 ticket alleged Mr. Oles illegally parked an "unaltered commercial vehicle" in the City, and the second $115 ticket conflictingly alleged he had illegally parked a *non*-commercial vehicle in a zone for "commercial vehicles."[7]

21.     Accordingly, Mr. Oles understood the tickets to be a mistake and entered Not Guilty pleas and "hearing requests" on both tickets, properly disputing both tickets and accurately

---

[6] Ex. 1, Jul. 6, 2021 Oles Summons No. 8912972996 (alleging violation of 34 R.C.N.Y. § 4-08(k)(1), which prohibits "[p]arking of unaltered commercial vehicles"); Ex. 2, Jul. 6, 2021 Oles Summons No. 8912973009 (alleging violation of 34 R.C.N.Y. § 4-08(1)(3)(ii) [that's an "L"], which makes it "unlawful to stand a vehicle in any space on a block unless such vehicle is a 'commercial vehicle'").

[7] Ex. 2, Jul. 6, 2021 Oles Summons No. 8912973009, alleging a simultaneous violation of 34 R.C.N.Y. § 4-08(1)(3)(ii), which regulates "use of the curb by commercial vehicles" and makes it "unlawful to stand . . . unless such vehicle is a 'commercial vehicle' as defined in 34 RCNY § 4-01(b)(i)."  Although this action contests the legality and constitutionality of fining drivers for parking commercially-registered vehicles in "COMMERCIAL VEHICLE" zones, it stops short of alleging Mr. Oles conduct falls outside the letter of 34 R.C.N.Y. § 4-08(1)(3)(ii), as Mr. Oles was not driving 'commercial vehicle' as defined in § 4-01(b)(i).

informing the City that he was driving a commercially-registered vehicle that "no state requirement" requires him to alter.

22.     Out of an abundance of caution, Mr. Oles also informed the City of both tickets by reference to their Summons Numbers to ensure their conflicting allegations would be addressed at the hearings he requested.

23.     Specifically, on August 23, 2021, Mr. Oles submitted a Not Guilty plea and "hearing request" for the July 6, 2021 unaltered commercial vehicle ticket he received (Summons No. 8912972996), enclosing a "statement as to why you believe the violation should be dismissed," which accurately informed DOF:

> I parked the vehicle at the loading dock and went inside to confirm the order and when I came out to load the furniture with the employees less than 10 minutes later, there was a ticket on my truck. There is no state requirement for putting lettering on my vehicle despite the commercial tags and I was not conducting business other than to utilize my vehicle to pick up merchandise from the loading dock at West Elm. There is no other place designated for pickup other than this exact space. Please dismiss this ticket. Thank you kindly.

24.     Approximately seven minutes later on August 23, 2021, Mr. Oles submitted a Not Guilty plea and "hearing request" for the 4:17 PM July 6, 2021 non-commercial vehicle ticket he received (Summons No. 8912973009), accurately informing Defendants he had received two tickets "despite parking in the designated loading area" and asking Defendants to "[p]lease dismiss both tickets 891297300-9 and 891297299-6 which has also been disputed. Thank you kindly."

25.     Despite these requests, Mr. Oles was never provided with any notice that a hearing had been scheduled or opportunity to participate in or attend any hearing on either ticket.

26.     On August 25, 2021 Department of Finance Administrative Law Judge ("DOF Judge") Susan Resch-Weinman issued a Decision and Order on Mr. Oles' unaltered commercial

vehicle ticket finding him "guilty" in a "hearing" that he was not invited to attend or participate in.  The full text of that Decision and Order states:[8]

> The respondent has been charged with violating Traffic Rule 4-08(k)(1) by standing or parking a vehicle with commercial plates without having permanently altered the vehicle by: removing the rear seats and seat fittings and plainly marking both sides of the vehicle with the name and address of the owner as shown on the certificate of registration in letters and numerals contrasting in color with the vehicle and not less than three inches in height[.] Respondent claims that the cited regulation was not in effect at the time the summons was issued since they live outside New York City and there is no requirement for lettering even with commercial tags. Respondent's claim is rejected because the traffic rules require vehicles parked in a commercial meter zone to have commercial lettering as indicated in traffic rules. Respondent claims that the vehicle was being used to load goods into or out of business or store. This is an affirmative claim wherein the burden of proof rests with the respondent. **Respondent is found guilty because vehicle was not a properly altered commercial vehicle** as required, when parking at this location.

27.    On August 26, 2021, DOF Judge Jocelyn Normand issued a Decision and Order on the second ticket, which alleged Mr. Oles had simultaneously parked a *non-commercial* vehicle in a commercial zone, ultimately finding Mr. Oles "guilty" of that violation as well.  The full text of that Decision and Order states:[9]

> Respondent is charged with violating Traffic Rule 4-08(l)(3)(ii) by standing a vehicle in any space on a block where signs are posted designating a commercial parking metered area unless such vehicle is a "commercial vehicle" as defined in section 4-01(b)(i) of the traffic rules or a vehicle with a valid "combination" registration from another state, and unless space is controlled by a parking meter. Respondent states that they were picking up furniture for their daughter. This is not a valid defense. **Commercial plated vehicles may not park in commercial only zones when not performing a commercial service. Sustained.**

---

[8] Ex. 3, Aug. 25, 2021 Decision and Order on Oles Summons No. 8912972996 (emphasis added).
[9] Ex. 4, Aug. 26, 2021 Decision and Order on Oles Summons No. 8912973009 (emphasis added).

28.     This was the first notice Mr. Oles received of Defendants' assertion of a right to prohibit commercially-registered vehicles from parking in commercial zones, which did not provide any information as to how or if Defendants make efforts to determine whether unoccupied vehicles are "performing a commercial service" at the time tickets are issued.

29.     Mr. Oles is identified as the sole "respondent" in the City's adjudication of both tickets and an "[o]wner" of the vehicle pursuant to N.Y. Veh. & Traf. Law § 239, which defines "[o]wner" as "any person" who, "at the time of the issuance of a notice of violation in any city in which a vehicle is operated," was "the registrant" or "beneficial or equitable owner of such vehicle."[10]

30.     In an effort to avoid additional fines, penalties, vehicle impoundment, or other adverse actions, Mr. Oles paid $230.00 for each of the aforementioned $115 parking tickets and an additional 2.0% ($4.60) processing fee, *i.e.*, $234.60.

### *Plaintiff Patricia Reed*

31.     Plaintiff Patricia Reed ("Mrs. Reed") is the registered owner of the unaltered and commercially-registered 2010 GMC Sierra pickup truck bearing commercial plates that was operated solely by her son, Mr. Oles, a beneficial and/or equitable owner of the vehicle, on July 6, 2021.

32.     Mrs. Reed is a grandmother who, like Mr. Oles, opposes improper ticketing of a vehicle registered to her name, costly and/or destructive modifications to the vehicle, and/or obligation to display information on the exterior of the vehicle such as her name and/or home address.

---

[10] N.Y. Veh. & Traf. Law § 239(1)(a)(1), (3).

*Defendant the City of New York*

33.    Defendant NYC is a duly constituted municipal entity created and authorized under the laws of the State of New York which, through a Mayor and Council and various departments, bureaus and agencies, conducts the business and runs the affairs of City government.

34.    Defendant NYC is a person for purposes of 42 U.S.C. § 1983 and, at all times relevant to this action, exercised governmental authority in this District.

35.    The NYPD Transportation Bureau's Traffic Enforcement District ("NYPD Traffic Enforcement") is the NYPD unit primarily responsible for the enforcement of laws and regulations involving moving and parked vehicles on behalf of the City.[11]

36.    NYPD Traffic Enforcement employs approximately 3,300 civilian Traffic Enforcement Agents ("TEAs") (up from approximately 1,700 in 2001) who issue several million parking tickets per year pursuant to 34 R.C.N.Y. § 4-08.[12]

37.    Although NYPD TEAs write most of the parking tickets issued in the City, other NYPD employees and City employees, agents, and entities also write parking tickets on behalf of the City.[13]  Accordingly, this Complaint's allegations of illegal ticketing by the City include, but are not limited to, tickets issued by NYPD.

38.    Copies of the parking tickets issued by various City agencies are sent to DOF for record keeping and collections.

39.    In 1969, the City shifted the adjudication of disputed parking tickets away from NYC's courts to the Parking Violations Bureau, which was established within the City's Department of Transportation at that time.

---

[11] https://www1.nyc.gov/site/nypd/bureaus/transit-housing/transportation.page (last accessed Dec. 2, 2020).
[12] https://www1.nyc.gov/site/nypd/bureaus/transit-housing/transportation.page (last accessed Dec. 2, 2020).
[13] *See* 19 R.C.N.Y. § 39-01 Definition for "Notice of violation" (listing dozens of NYC entities eligible to write parking tickets, such as the Fire Department).

40.    In 1994, the City shifted the Parking Violations Bureau's responsibilities from the City's Department of Transportation to its Department of Finance Adjudication Division ("DOF Adjudication Division").[14]

41.    DOF is the department tasked with collecting billions of dollars in annual tax and other revenue, including several hundred million dollars in annual fines and penalties for alleged parking violations in the City.

42.    Although the DOF Adjudication Division handles the adjudication of parking tickets, it is often still referred to as the Parking Violations Bureau.[15]

43.    The DOF Adjudication Division is both controlled by and part of DOF.

### Individual Defendant Jeffrey Shear

44.    Jeffrey Shear, Deputy Commissioner of the New York City Department of Finance Treasury & Payment Services, is responsible for overseeing DOF's Collections and Parking Summons Adjudication divisions.[16]

45.    Jeffrey Shear is identified in NYC's 2021 Policymaker List as an official with substantial policymaking authority for the City and DOF.[17]

### Individual Defendant Mary Gotsopoulis

46.    Mary Gotsopoulis is DOF's Chief Administrative Law Judge ("Chief Judge Gotsopoulis") who acts through the DOF Adjudications Division and, at all relevant times, was and is responsible for overseeing the adjudication of parking tickets by DOF.

---

[14] This includes DOF's Commercial Adjudication Units.
[15] N.Y.C. Admin. Code § 19-201.
[16] https://www1.nyc.gov/site/finance/about/bios/jeffrey-shear.page (noting "Jeff and his team are responsible for safeguarding the cash assets of the City of New York" and "collecting funds owed to the City") (last accessed Oct. 31, 2021).
[17] https://www1.nyc.gov/site/coib/public-documents/policymaker-lists.page (NYC Policymaker Lists for years 2013-2021) (last accessed Nov. 8, 2021).

47.    Defendant Chief Judge Gotsopoulis reports to Defendant Jeffrey Shear.

48.    Chief Judge Gotsopoulis is also identified in the City's Policymaker List as an official with substantial policymaking authority for the City and DOF.

49.    For more than ten years, Chief Judge Gotsopoulis has been identified in the City's Policymaker List as the person with substantial policymaking authority for the DOF Adjudications Division.[18]

## FACTUAL ALLEGATIONS

50.    Defendants issue millions of dollars of illegal parking tickets annually with actual knowledge that such tickets are illegal and/or while remaining willfully blind to the unambiguous laws Defendants claim to be enforcing when they issue tickets to drivers like Mr. Oles for violations that did not occur, notwithstanding the City's own laws and rules prohibiting such fines.[19]

51.    Defendants are required to comply with and abide by all traffic laws, rules, regulations, and Constitutional limitations, and to authorize the issuance of tickets only as permitted by those authorities and not in contravention of those authorities.

52.    At all relevant times, Defendants acted through the departments, bureaus, agencies, and/or individuals named herein to commit the acts alleged throughout this Complaint and are responsible for those acts.

53.    Drivers who refuse to make destructive alterations to their vehicles and/or pay illegal tickets face various forms of illegal retaliation by Defendants, including without limitation

---

[18] https://www1.nyc.gov/site/coib/public-documents/policymaker-lists.page (NYC Policymaker Lists for years 2011-2021, last accessed Nov. 8, 2021).
[19] Such fines are often accompanied by additional and substantial penalties, as well as thousands of dollars of damage that class members inflict upon their own vehicles in good faith attempts to comply with NYC's illegal vehicle alteration requirements.

penalties, interest, vehicle booting, registration suspensions, impoundment, and/or having their vehicle sold at Defendants' regular impounded vehicle auctions.

54.     The number of vehicles seized as part of Defendants' parking ticket enforcement efforts underscores the non-nominal scope of Defendants' unjust enrichment.  According to Defendant Jeffrey Shear, DOF's "Scofflaw Enforcement Program seized 118,000 vehicles" in calendar year 2018 alone.[20]

55.     Defendants threaten to and do utilize a phalanx of illegal retaliation, property deprivation, and freedom of movement deprivation tactics to compel payment for illegal tickets that initially amount to less than $350, the general threshold for vehicle booting and towing, by continually adding additional penalties and interest to unpaid tickets.[21]

56.     To the extent putative class members pleaded guilty to and/or paid for illegal tickets, they did so to avoid illegal retaliation by Defendants and/or would not have done so but for Defendants' misrepresentations and/or omissions.

57.     Defendants regularly treat drivers who have the means and time to dispute illegal tickets in the same way they treat drivers without such means.  "Hearings" on illegal parking tickets occur at the City's Department of Finance, where biased Administrative Law Judges ("DOF Judges"), who are actually DOF contract attorneys, systematically uphold and order drivers to pay

---

[20] Ex. 5, Apr. 29, 2019 testimony of Defendant Jeffrey Shear at 5.

[21] "You can be booted for owing the city more than $350 in parking . . . violation tickets that are in judgment. . . . If you do not pay the parking . . . violation judgment debt and related fees within two business days of being booted, then your vehicle may be towed. A ticket becomes 'in judgment' when approximately 100 days have passed . . . . Once that happens, a judgment is docketed with the Civil Court of the City of New York for your debt and the City can take enforcement action against you such as towing or booting your vehicle. If your ticket is in judgment, the total amount you owe includes the fine, penalties and interest that have been added for nonpayment. . . . **Vehicles are typically sold after two weeks of being impounded, but your vehicle could be sold earlier."** https://www1.nyc.gov/site/finance/vehicles/services-booting_faq.page (emphasis added) (Booting Frequently Asked Questions 1-2 and 15, last accessed Nov. 4, 2020); "Your New York State vehicle registration can be deferred or suspended if you have: 3 or more outstanding parking . . . violations in any combination in judgment within an 18-month period." https://portal.311.nyc.gov/article/?kanumber=KA-02144 (NYC Parking Ticket or Camera Violation Clearance information, last accessed Nov. 4, 2020).

illegal "unaltered commercial vehicle" tickets and additional "companion summonses" (discussed *infra*).

### All "Unaltered Commercial Vehicle" Tickets Are Illegal and Unconstitutional

58.    Defendants vehicle alteration requirements have no discernible relation to the regulation of parking in the City, impose substantial burdens on interstate commerce, and fail to promote public health, welfare, or safety.

59.    This is corroborated by the fact that neither unaltered commercial vehicle tickets do not appear in the NYPD Patrol Guide's list of eight types of parking violations that "create safety hazards."[22]

60.    The City's vehicle alteration requirements protect its own local economic interests and unfairly burden commerce by discriminating against both out-of-state and out-of-town (but in-state) vehicles, making joint compliance impossible for many drivers subject to conflicting regulatory requirements.

61.    The meaning and intent of the City's Traffic Rules is also summarized in NYPD's Patrol Guide, which directs NYPD to "[c]ite only valid applicable violations and sections of the New York City Traffic Rules when issuing a Notice of Parking Violation."[23]

62.    Any suggestion by Defendants in this litigation that its commercial vehicle alteration requirements provide safety benefits would be pretextual and incapable of overcoming the inherent danger Defendants' inflict on the public by requiring the permanent and destructive removal of seats, seatbelts,[24] and seat mounts from any vehicle they characterize as "commercial,"

---

[22] Ex. 6, NYPD Patrol Guide at 5 (Parking Summonses – General Procedure No. 209-07).

[23] Ex. 6, NYPD Patrol Guide "Parking Summonses – General Procedure No. 209-07" at 2.

[24] Although the Manual for DOF Judges, Ex. 7 at 77, indicates Defendants alteration requirements do not require removal of "seat belts," this is not possible for large numbers of vehicles with integrated seatbelts, which "are built into the seat itself" and "typically used in trucks," *i.e.*, compelling permanent removal of seats requires permanent removal of seatbelts from many trucks frequently operated in the City, such as Ford's model year 2004-2008 Regular

as well as the personal safety and privacy risks associated with compelling vehicle registrants like Patricia Reed to permanently emblazon their full name and/or address on the outside of their vehicles.

### 34 R.C.N.Y. § 4-08(k)(1) "Unaltered Commercial Vehicle" Violations

63.     Mr. Oles was charged with parking an "unaltered commercial vehicle" in violation of 34 R.C.N.Y. § 4-08(k)(1),[25] which prohibits parking or operation of an unaltered vehicle with commercial plates that "is also in compliance with paragraph (i) of the definition of commercial vehicle as set forth in 34 RCNY § 4-01."

### 34 R.C.N.Y. § 4-01(b) Commercial Vehicle Definition

64.     However, the City's definition of a commercial vehicle states "a vehicle will *not* be deemed a commercial vehicle or a truck *unless*: (A) it bears commercial plates; *and* (B) it is permanently altered by having all seats and seat fittings, except the front seats, removed . . . ; *and* (C) it displays the registrant's name and address permanently affixed in characters at least three inches high on both sides of the vehicle . . . ."[26] Accordingly, vehicles that are not "permanently altered" or do not display "the registrant's name and address," like the truck Mr. Oles parked, are "not . . . commercial vehicle[s]"[27] and, as a matter of law, incapable of violating 34 R.C.N.Y. § 4-08(k)(1) (as alleged in Oles Summons No. 8912972996), which only apples to unaltered vehicles

---

& Extended Cab F-150, 2001-2003 F-150 Extended Cab, 2002-2007 Super Duty Extended Cab, 1999-2006 General Motors Trucks & SUV's, and Dodge's 1998-2001 Ram Extended Cab pickup trucks. https://www.oemcarandtruck seats.com/blogs/knowledge-base/integrated-seatbelts-what-are-they-and-why-do-they-exist (last accessed Jun. 28, 2021). "Seat belts saved an estimated 14,955 lives in 2017." https://www.iihs.org/topics/seat-belts (last accessed Jun. 28, 2021).

[25] Ex. 1, Jul. 6, 2021 Summons No. 8912972996 alleging violation of 34 R.C.N.Y. § 4-08(k)(1).

[26] 34 R.C.N.Y. § 4-01(b), "Commercial vehicle" definition, ¶ (i), which is incorporated by reference into 34 R.C.N.Y. § 4-08(k)(1), the rule Mr. Oles was accused of violating in Summons No. 8912972996.

[27] 34 R.C.N.Y. § 4-01(b) (the R.C.N.Y. definition of a "Commercial vehicle" is incorporated by reference into 34 R.C.N.Y. § 4-08(k)(1), which Summons No. 8912972996 accused Mr. Oles of violating).

that are "in compliance with . . . the definition of commercial vehicle as set forth in 34 RCNY § 4-01." These tickets are nonetheless systemically upheld and enforced by Defendants.

65.     Accordingly, because the City's own rules governing "unaltered commercial vehicle" tickets abrogate all cognizable bases for their issuance, 34 R.C.N.Y. §§ 4-01(b) and 34 R.C.N.Y. § 4-08(k)(1) constitute an independent basis for dismissing all "unaltered commercial vehicle" tickets, which are also issued in contravention of, *inter alia*, N.Y.C. Admin. Code, state law, federal law, and the United States and New York State Constitutions.

### N.Y.C. Admin. Code § 10-127

66.     N.Y.C. Admin. Code § 10-127 requires permanent and destructive alterations to "[e]very commercial vehicle operating on the streets of the city," including permanent removal of important equipment such as seats and affixation of "the name and address of the owner" to the exterior of the vehicle, authorizing "a fine of *not more than* fifty dollars" for "[a]ny person convicted of a violation."[28] Accordingly, the $115 unaltered commercial vehicle tickets issued to the putative class also violate N.Y.C. Admin. Code § 10-127.

### N.Y.C. Admin. Code § 19-203

67.     NYC Administrative Code authorizes fines "for parking violations, provided however, that monetary penalties shall not exceed fifty dollars for each parking violation," except "where stopping or standing is prohibited," in which case a $100 limit applies," in addition to a $15 surcharge.[29] Accordingly, the fines assessed against putative class members in excess of these limits and/or fines assessed for violations that did not occur violate § 19-203.

---

[28] N.Y.C. Admin. Code § 10-127 (emphasis added).
[29] N.Y.C. Admin. Code § 19-203. This section also authorizes penalties up to $150 for handicapped parking violations, which are rarely issued in NYC. 19 R.C.N.Y. § 39-05 contains NYC's schedule of fines, which frequently imposes the maximum permitted $50 (parking) and $100 (stopping and standing) fines, which are respectively levied at $65

*N.Y. Veh. & Traf. Law § 237*

68.    Defendants' issuance of unaltered commercial vehicle tickets, either alone or in combination with "companion summons(es)" alleging the same vehicle is non-commercial, exceed the City's authority to enforce "parking" violations pursuant to N.Y. Veh. & Traf. Law § 237 and/or the monetary penalty limitations established by § 237.

## TICKET STACKING

### *Official Policy of Issuing and Enforcing Illegal "Companion Summonses"*

69.    Defendants also intentionally ignore and/or remain willfully blind to the fact that they annually impose millions of dollars of fines for objectively impossible conduct.

70.    In addition to issuing tickets alleging a vehicle is *"commercial,"* and therefore illegally unaltered or parked, NYPD regularly stacks a second "companion summons" on the same vehicle, contradictorily and impossibly alleging the same vehicle is also *"non-commercial,"* and therefore illegally parked in a commercial zone.[30]

71.    Because NYPD cannot observe the objectively impossible conduct alleged by the "companion summonses" they issue, such as the ones issued to Mr. Oles, no presumption of validity can be ascribed to such tickets.

---

and $115 due to N.Y. Veh. & Traf. Law § 1809-A, which requires cities having a population of 100,000 or more to impose a $15 surcharge on parking violations.

[30] *See, e.g.*, Ex. 1, Jul. 6, 2021 Oles Summons No. 8912972996, Violation Code 82 ticket alleging a violation of 34 R.C.N.Y. § 4-08(k)(1), which prohibits "[p]arking of unaltered commercial vehicles" that satisfy "paragraph (i) of the definition of commercial vehicle as set forth in 34 RCNY § 4-01," cf. Ex. 2, Jul. 6, 2021 Oles Summons No. 8912973009, Violation Code 31 ticket alleging a violation of 34 R.C.N.Y. § 4-08(1)(3)(ii), which makes it "unlawful to stand a vehicle in any space on a block unless such vehicle is a 'commercial vehicle' as defined in 34 RCNY § 4-01(b)(i)," *i.e.*, the same commercial vehicle definition incorporated by reference into § 4-08(k)(1).  Violation Code descriptions available at  https://www1.nyc.gov/site/finance/vehicles/services-violation-codes.page  (last accessed Nov. 12, 2021).

72.    NYPD officers and agents who stack tickets alleging objectively impossible and mutually exclusive conduct also sign declarations at the bottom of each ticket stating, "I affirm under penalty of perjury (Penal Law 210.45) that I personally observed the offense charged."[31]

73.    When NYPD applies the same commercial vehicle definition and swears that a vehicle committed one violation by being a "commercial vehicle," and also swears the same vehicle committed another violation by being a "*non*-commercial vehicle," neither ticket constitutes prima facie evidence of the predicate facts alleged, which the issuing officer has sworn to be false.[32]

74.    Under these circumstances, when the predicate factual allegation for a first ticket is an affirmative defense to a second ticket stacked on top of it, and the inverse is also true, neither constitute prima facie evidence of a violation — especially when issued by the same officer at the same time.[33]

75.    Accordingly, no presumption of validity can attach to "companion summonses" predicated upon objectively impossible and mutually exclusive allegations made under penalty of perjury, such as the tickets issued to Mr. Oles, which effectuate violations of drivers' statutory and Constitutional rights.

### *Manual for DOF Judges*

76.    During the investigation culminating in this lawsuit, it became clear that the volume of stacked tickets that alleged the same vehicle was both "commercial" and "non-commercial" at

---

[31] *See, e.g.*, Ex. 1, Jul. 6, 2021 Oles Summons No. 8912972996; N.Y. Penal Law § 210.45 (making false written statements a class A misdemeanor punishable by up to one year in jail, three years' probation, and a fine).
[32] Quoting descriptions for Violation Code 31 and 82 available at https://www1.nyc.gov/site/finance/vehicles/services -violation-codes.page (last accessed Nov. 12, 2021), *i.e.*, the violations alleged of Mr. Oles in Summons Nos. 8912972996 and 8912973009.
[33] *See, e.g.*, contradictory allegations against Mr. Oles cited and explained *supra* at 16 n.30.

the same time were unlikely to have resulted from independent decision making or random and unauthorized decisions by NYPD or DOF.

77.     That suspicion was confirmed by the Administrative Law Judge Manual for Department of Finance Judges ("Manual for DOF Judges"), which memorializes a longstanding and demonstrable policy of instructing DOF Judges to find drivers guilty of illegal tickets predicated upon vehicles' "*commercial*" status and prohibiting DOF Judges from dismissing illegal and objectively impossible "companion summonses" issued to the same vehicle and predicated upon the vehicle's "*non-commercial*" status, such as the tickets issued to Mr. Oles and thousands of other drivers, which effectuate a continuing violation of drivers' rights.

78.     Although the relevant sections of that manual are cumbersome, perhaps by design, and span several pages, they unquestionably memorialize an official municipal policy and custom that this action takes issue with — intentionally and impossibly charging the same vehicle for falling within and without the 34 R.C.N.Y. § 4-01(b) commercial vehicle definition at the same time.  This practice is memorialized in two sections of the Manual for DOF Judges that encourage and mandate illegal and unconstitutional fines by misrepresenting the City's rules governing parking and definition of "[c]ommercial vehicle" contained therein.

79.     The actual 34 R.C.N.Y. § 4-01(b) definition of a commercial vehicle states:[34]

Commercial vehicle.
    (i) For purposes of parking, standing and stopping rules, <u>a vehicle will not be deemed a commercial vehicle or a truck **unless**</u>:
        (A) <u>it bears commercial plates; and</u>
        (B) <u>it is permanently altered</u> by having all seats and seat fittings, except the front seats, removed to facilitate the transportation of property, except that for vehicles designed with a passenger cab and a cargo area separated by a partition, the seating capacity within the cab will not be considered in determining whether the vehicle is properly altered; <u>and</u>
        (C) <u>it displays the registrant's name and address permanently affixed in characters at least three inches high on both sides of the vehicle</u>, with such

---

[34] 34 R.C.N.Y. § 4-01(b) (emphasis added).

display being in a color contrasting with that of the vehicle and placed approximately midway vertically on doors or side panels.

(ii) For the purposes of rules other than parking, stopping and standing rules, a vehicle designed, maintained, or used primarily for the transportation of property, or for the provision of commercial services and bearing commercial plates will be deemed a commercial vehicle.

(iii) Vehicles bearing commercial or equivalent registration plates from other states or countries will not be deemed trucks or commercial vehicles unless they are permanently altered and marked as required in (i)(B) and (C) of this definition, above.

80.    Accordingly, unaltered vehicles like Mr. Oles' pickup truck are "not . . . commercial vehicle[s]"[35] and incapable of committing violations predicated upon a vehicle's "commercial" status.

81.    The intentional and systemic nature of Defendants' issuance and enforcement of improper "unaltered commercial vehicle" tickets with additional mutually exclusive "companion summonses" is evidenced in the sections of the Manual for DOF Judges that unilaterally alter and add nonexistent "conversation requirements" to the actual 34 R.C.N.Y. § 4-01(b) definition of a "[c]ommercial vehicle."

82.    The "Commercial Adjudications" section of the Manual for DOF Judges starts by providing its own "definition" of a commercial vehicle (included below), which notably contains no definition and instead falsely characterizes the elements required to fall within the R.C.N.Y.'s definition of a commercial vehicle as mandates:[36]

### THE DEFINITION OF A COMMERCIAL VEHICLE

Commercial vehicles are defined under NYC Traffic Rules § 4-01(b).

For the purposes of parking, standing and stopping rules, **a commercial vehicle must**:

(1) bear commercial plates, and

---

[35] 34 R.C.N.Y. § 4-01(b) (the § 4-01(b) definition of a "Commercial vehicle" is incorporated by reference into 34 R.C.N.Y. § 4-08(k)(1), which Summons No. 8912972996 accused Mr. Oles of violating by parking an "unaltered commercial vehicle.").

[36] Ex. 7, Nov. 2018 Manual for DOF Judges at 77-78 (emphasis added, brackets in original).

(2) <u>be permanently altered</u> by having all seats and seat fittings (not seat belts), except the front seats, removed to facilitate the transportation of property, <u>and</u>

(3) <u>display the registrant's name and address permanently</u> affixed in characters at least three inches high on both sides of the vehicle, with such display being in a color contrasting with that of the vehicle and placed approximately midway vertically on doors or side panels. This definition encompasses sedans, vans, station wagons and minibuses, provided that they have been properly converted.

For the purposes of rules other than parking, stopping and standing rules, a commercial vehicle is one designed, maintained or used primarily for the transportation of property or for the provision of commercial services and bearing commercial plates. <u>This definition encompasses all trucks</u>, but trucks have a separate definition of their own: having two axles with six tires, or three or more axles [see Traffic Rules § 4-13(a)(l)].  The above stated conversion requirements apply to all vehicles engaged in commercial activities in the City of New York regardless of the state or country in which any particular vehicle is registered with a commercial or equivalent plate type. (Note: <u>This agency applies an exception to the lettering requirement where the summonsed vehicle is part of a large fleet whose markings are</u> distinctive and constitute a <u>nationally recognized</u> "logo" which has been identified with the vehicle owner by the public for a number of years (e.g. Federal Express, Con Edison).

83. Accordingly, instead of providing a cognizable commercial vehicle definition or accurate summary of the R.C.N.Y. § 4-01(b) definition, the above section falsely informs DOF Judges that § 4-01(b) defines a commercial vehicle as "all trucks" and/or any vehicle "engaged in commercial activities" with "commercial or equivalent" plates, and even falsely informs DOF Judges that, pursuant to § 4-01(b), such vehicles "must" be altered (unless they look famous).[37]

84. The Manual for DOF Judges then leverages its own objectively false and misleading commercial vehicle "definition" to promote issuance and enforcement of illegal

---

[37] Plaintiffs plan to seek discovery regarding Defendants' rationale for directing DOF Judges to refrain from enforcing illegal unaltered vehicle tickets against "nationally recognized" companies such as "Federal Express," but not individuals and small businesses, and whether that special treatment, which also appears nowhere in 34 R.C.N.Y. § 4-01(b), violates the Equal Protection Clause, is connected to any legitimate government objective, and/or is designed to prevent companies capable of mounting powerful legal challenges from contesting Defendants' ticketing practices.

"companion summonses" for objectively impossible conduct, such as the second ticket issued to Mr. Oles.[38]

85.    That official policy and custom appears in the following portions of the "Commercial Regulations" section of the Manual for DOF Judges:[39]

### COMMERCIAL REGULATIONS

. . .

"Unaltered vehicle" is a separate and distinct violation for which a valid summons may be issued where the vehicle is in all other respects lawfully parked.[40]

. . .

### THE COMMERCIAL VEHICLE DEFENSE

Commercial vehicles, as defined by the NYC Traffic Rules, are accorded certain defenses to parking violation charges that are not available to any other class of vehicles.[41]

. . .

### "UNALTERED VEHICLE" VIOLATIONS

Where the summons issuer observes the vehicle to be not in compliance with the conversion requirements, a summons shall be issued for having an "unaltered vehicle." On occasion a summons for "unaltered vehicle" may be issued in conjunction with a second summons [the "Companion Summons"] for a parking violation where a commercial defense might be available. However, if the vehicle is not in physical compliance with the conversion requirements, the parking summons will not be amenable for commercial defense consideration.[42]

. . .

### Proof of Compliance

Where a respondent has been charged with "unaltered vehicle", he/she must persuasively rebut the prima facie case.[43]

. . .

### Proof of No Commercial Use/Purpose

. . .

It should be noted that it is extremely unlikely that a commercial respondent will be able to establish by evidence that, while in New York City, its

---

[38] Ex. 1, Jul. 6, 2021 Oles Summons No. 8912972996, alleging a violation of 34 R.C.N.Y. 4-08(k)(1); Ex. 2, Jul. 6, 2021 Oles Summons No. 8912973009, alleging a simultaneous violation of 34 R.C.N.Y. 4-08(1)(3)(ii), which makes it "unlawful to stand a vehicle in any space on a block unless such vehicle is a 'commercial vehicle' as defined in 34 RCNY § 4-01(b)(i)."  Accordingly, although this action contests Oles Summons No. 8912973009 and the City's Rules and practice of issuing $115 fines to law-abiding drivers who foreseeably park commercially-registered vehicles in spaces designated for "COMMERCIAL VEHICLE" parking by the City, it stops short of alleging Mr. Oles conduct fell outside the letter of 34 R.C.N.Y. 4-08(1)(3)(ii).

[39] Ex. 7, Nov. 2018 Manual for DOF Judges at 78-83 (emphasis added).

[40] Manual for DOF Judges at 78 (emphasis added), notably mandating issuance of parking tickets and fines based solely on vehicles' appearance and in a manner that exceeds the City's parking regulation authorities.

[41] Ex. 7, Nov. 2018 Manual for DOF Judges at 83.

[42] Ex. 7, Nov. 2018 Manual for DOF Judges at 83 (emphasis added, brackets in original).

[43] Ex. 7, Nov. 2018 Manual for DOF Judges at 83.

vehicle was not engaged in a commercial activity. Commercial plate-type registration and/or registration in the name of a commercial enterprise create a very strong inference that the vehicle is used for commercial purposes.[44]

. . .

**NON-COMMERCIAL VEHICLES USED FOR COMMERCIAL PURPOSES**
Unless a person is operating a "commercial vehicle," he/she is not entitled to successfully claim commercial defenses. . . .  It is not the ALJ's job to "give the respondent a break."[45]

86.    This confirms the tickets issued to and upheld against Mr. Oles were not random and unauthorized acts by Defendants.  For example, the above section states that, for vehicles like Plaintiffs', which are "not . . . commercial"[46] and indeed "not in compliance with the conversion requirements" (that do not apply to their vehicles), "a summons shall be issued for having an 'unaltered vehicle,'"[47] and further permits issuance of a second "Companion Summons" for a violation where a commercial defense might be available, like the second ticket alleging Mr. Oles illegally parked a "non-commercial vehicle" in a commercial vehicle zone.  Finally, the above section ensured Mr. Oles would be found guilty on his second ticket by directing DOF Judges to deny "commercial defense consideration" to any vehicle "not in physical compliance with the conversion requirements" (which are inapplicable to Mr. Oles).[48]

87.    This official policy and custom of instructing DOF Judges to, whether knowingly or not,[49] gaslight and force law-abiding drivers like Mr. Oles to pay fines for unaltered commercial

---

[44] Ex. 7, Nov. 2018 Manual for DOF Judges at 83-84.

[45] Ex. 7, Nov. 2018 Manual for DOF Judges at 89-90.

[46] 34 R.C.N.Y. § 4-01(b) (the § 4-01(b) definition of a "Commercial vehicle" is incorporated by reference into 34 R.C.N.Y. § 4-08(k)(1), which Summons No. 8912972996 accused Mr. Oles of violating by parking an "unaltered commercial vehicle.").

[47] The Manual for DOF Judges notably drops the word "commercial" from "unaltered commercial vehicle" in this section in an apparent attempt to prevent readers from realizing it is mandating penalties for objectively impossible conduct, *i.e.*, simultaneously convicting the same vehicle for being both "commercial" and "non-commercial."

[48] Ex. 7, Nov. 2018 Manual for DOF Judges at 83.

[49] Plaintiffs do nonetheless submit that Defendants, and specifically DOF Judges, have a legal obligation to read, and not flagrantly violate, the laws they purport to be enforcing.  This contention also finds support in Ex. 7, Nov. 2018 Manual for DOF Judges at 6 (indicating DOF Judges are obligated to "know the law" and apply it "consistently and impartially.").

vehicle violations they did not commit *and* additional objectively impossible "companion summonses" represents another independent basis for invalidating such tickets.

88.    This is the paradox Mr. Oles take issue with — Defendants' official policy and custom of:

      a.    Claiming the definition of a commercial vehicle includes Mr. Oles while writing him a first ticket for operating or parking a "commercial vehicle,"[50] and then

      b.    Claiming the same commercial vehicle definition *excludes* Mr. Oles while writing him a second ticket for parking a "non-commercial vehicle" in a commercial zone,[51] and then

      c.    Barring DOF Judges from permitting Mr. Oles to argue his second ticket is eligible for a "commercial defense" because NYPD just swore his vehicle is "commercial."[52]

## **WILLFUL VIOLATIONS OF LAW AND DRIVERS' RIGHTS**

89.    Defendants' willful and systemic violations of the laws, rules, procedures, and Constitutional limitations prohibiting the conduct alleged herein are exacerbated by the fact that Defendants knowingly host a tribunal designed to deprive drivers of due process and impose unlawful and excessive fines.

---

[50] Ex. 1, Jul. 6, 2021 Oles Summons No. 8912972996, alleging a violation of 34 R.C.N.Y. § 4-08(k)(1), which prohibits "[p]arking of unaltered commercial vehicles" that satisfy "paragraph (i) of the definition of commercial vehicle as set forth in 34 RCNY § 4-01."

[51] Quoting DOF's Violation Code 31 definition; Ex. 2, Jul. 6, 2021 Oles Summons No. 8912973009, Violation Code 31 ticket alleging a violation of 34 R.C.N.Y. § 4-08(1)(3)(ii), which makes it "unlawful to stand . . . unless such vehicle is a 'commercial vehicle' as defined in 34 RCNY § 4-01(b)(i)," *i.e.*, the same commercial vehicle definition.

[52] Manual for DOF Judges at 83; Ex. 1, Jul. 6, 2021 Oles Summons No. 8912972996.

*Defendants Intentionally Enforce Illegal Tickets*

90.     One tactic Defendants used to establish this rent-seeking operation involved removing ticket disputes from the City's courts several decades ago and forcing drivers to dispute parking tickets in the City's Department of *Finance*, where biased DOF Judges continue to systemically uphold and force drivers to pay illegal tickets of the type issued to Mr. Oles and thousands of other similarly situated putative class members.

91.     DOF's refusal to dismiss illegal tickets, even when drivers like Mr. Oles provide actual written notice, underscores the systemic and intentional nature of Defendants' conduct.

92.     DOF protects these official policies and customs by paying contract attorneys to work as DOF Judges who preside over and regularly uphold illegal tickets.

93.     These hearings occur at DOF, which identifies itself as the "Parking Violations Bureau" for this purpose.[53]

94.     This apparent attempt to rebrand DOF with a veneer of objectivity does not extend to the written decisions issued by DOF Judges, which appear on DOF letterhead.

95.     Drivers like Mr. Oles are naturally confused by the bias DOF Judges exhibit in upholding and ordering payment for illegal and objectively impossible parking tickets.

96.     DOF Judges' bias is also apparent in the tortured opinions they write upholding patently illegal tickets and frequently supporting their decisions with misleading or objectively false representations regarding the law, the City's rules, and even drivers' representations to DOF.[54]

---

[53] 19 R.C.N.Y. § 39-01 accurately defines the "Parking Violations Bureau" as "an administrative tribunal in the New York City Department of Finance."

[54] For example, DOF Judge Resch-Weinman's Decision and Order claims Mr. Oles argued the "regulation was not in effect" since he "live[s] outside New York City," which was neither argued nor suggested anywhere in Mr. Oles' hearing requests.

97.     DOF Judges also preside over appeals of fellow DOF Judges' decisions and apply the same unlawful DOF policies and customs to uphold and affirm illegal tickets in DOF Appeals Board Decisions underscoring the intentional and systemic nature of the violations alleged herein.

98.     DOF Appeals Board Decisions also lack any notice of an opportunity to further appeal or otherwise seek judicial review of DOF Appeals Board Decisions.[55]  Accordingly, any claim by Defendants that putative class members had notice, an opportunity, or an obligation to exhaust state court remedies would be pretextual in view of, *inter alia*, Defendants' deletion of that notice from their Appeals Board Decision template years ago.

99.     Plaintiffs also note the cost of going to the New York State Supreme Court to adjudicate illegal tickets in an Article 78 proceeding would almost invariably deprive putative class members of more property (money) than the illegal ticket(s) they received, even if they prevailed and received a full refund for such ticket(s), because the cost of bringing an Article 78 proceeding would exceed the cost of the illegal ticket(s) at issue for almost any individual putative class member.[56]

100.     Plaintiffs further note that, even if a good Samaritan putative class member were to contest, *e.g.*, illegal unaltered commercial vehicle tickets in the New York State Supreme Court and prevail, it would provide no benefit to other putative class members, because Defendants have adopted an official policy of instructing DOF Judges to *ignore* New York State Supreme Court precedent in DOF parking ticket hearings.  Specifically, a DOF memorandum circulated by Defendant Gotsopoulis on June 22, 2010 indicates parking ticket decisions "of the Supreme Court

---

[55] Although a notice informing drivers of an opportunity to seek judicial review of adverse DOF Appeals Board Decisions previously appeared on all Appeals Board decisions, Defendants deleted that notice from the Appeals Board Decision template.

[56] Article 78 filing fees alone total $305 before paying attorneys' fees and service costs that regularly exceed several thousand dollars.  Such an expense is also estimated to be a fiscal impossibility for thousands of putative class members.  Accordingly, any argument by Defendants in this litigation that Article 78 proceedings are "available" to the putative class and/or sufficient to cure Defendants' systemic and intentional violations would be pretextual.

of the State of New York" are "not binding precedent" for DOF Judges "unless and until an Appellate Court rules similarly."[57]

101.    Defendants also use a creative tactic to expand the reach of DOF's "not binding precedent" policy.  Specifically, Defendants prevent appellate courts from creating the only type of precedent that DOF Judges are told to follow by strategically abandoning DOF's right to appeal Article 78 rulings invalidating illegal tickets, which deprives appellate courts of the opportunity to affirm Article 78 rulings invalidating certain types of illegal tickets, *i.e.*, Defendants intentionally obstruct appellate courts' ability to issue the one and only type of precedent DOF Judges are told to consider "binding."

102.    Accordingly, Defendants' systemic and intentional violations of law and deprivation of putative class members' due process rights render DOF's adjudication proceedings, state Article 78 proceedings, and/or state appellate court proceedings inadequate and/or unavailable for due process purposes.

103.    These predatory ticket issuance, adjudication, and collection practices violate myriad authorities cited herein and understandably lack any citations to authority that would permit Defendants to engage in this type of extortion.  Accordingly, a class action lawsuit the only cognizable mechanism for putative class members to obtain relief.

### Defendants' Hearings are Designed to Find Drivers GUILTY

104.    The systemic and intentional nature of DOF's bias is memorialized in multiple locations, including NYC's annual Mayor's Management Report.  The section of that report prepared by DOF Commissioner Sherif Soliman includes a "how we performed" section regarding

---

[57] Ex. 12, NYC Department of Finance Memorandum regarding "Article 78 Decision by Justice Alice Schlesinger-Ko Case," circulated by Defendant Chief Judge Gotsopoulis Jun. 22, 2010.

DOF's efforts to "[b]ill, adjudicate and collect on parking tickets."  Notably, DOF's official "Performance Indicators" for parking ticket adjudication and collection efforts openly acknowledge DOF's goal of reducing the number of "[p]arking ticket appeals granted a reversal" and reducing the number of parking tickets "that are dismissed," listing both as "Critical Indicator[s]."[58]

105.    DOF's official policy and custom of encouraging guilty verdicts on tickets that have not even been written yet speaks volumes about Defendants' willingness to follow the law and provide due process.  Defendants' policy and custom of pushing guilty verdicts is not limited to DOF Management Reports — multiple DOF Judges have also complained they are pressured to find drivers guilty and subjected to retaliation when they fail to meet guilty quotas,[59] enabling the City's imposition and collection of substantially more parking ticket revenue than any other city or municipality.

106.    A Fox 5 NY investigative report, based on interviews with four DOF Judges working under DOF Chief Administrative Law Judge Gotsopoulis, a Defendant in this action, describes a remarkable level of intentional and systemic bias at DOF.  One of the DOF Judges interviewed, who understandably asked not to be named, told Fox 5 NY that "[j]ustice and fairness is not at a high level of priority" at DOF, acknowledging "the parking violations bureau is part of the agency that is charged with making money."[60]  When asked about "guilty quotas," a DOF Judge said "[y]ou are less willing to stick your neck out" because DOF Judges are "required to report how many tickets they decide are not guilty."  DOF Judges also reported that they are

---

[58] Department of Finance section of 2021 NYC Mayor's Management Report at 433-434 (indicating the "Desired Direction" of those metrics is "Down."), https://www1.nyc.gov/assets/operations/downloads/pdf/mmr2021/2021_mmr.pdf (last accessed Nov. 12, 2021).
[59] Ex. 8, Fox 5 NY, *NYC Ticket Judges*, Jul. 22, 2010.
[60] Ex. 8, Fox 5 NY, *NYC Ticket Judges*, Jul. 22, 2010.

required to handle up to 70 cases per *hour*, *i.e.*, less than 60 seconds per case, and "receive less work" if they "don't meet ticket quotas."[61]

107.    DOF's ability to retaliate against impartial DOF Judges by reducing or eliminating their compensation is secured by DOF Judges' status as hourly contract workers with "no rights to their jobs or to redress of their grievances."[62]

108.    Defendants' systemic and intentional issuance of illegal tickets, failure to detect and administratively dismiss illegal tickets that are issued by a ministerial act, and diversion of disputed tickets' adjudication from Courts and into DOF proceedings that fail to comport with the most basic tenets of due process comprise an overwhelming volume of evidence establishing Defendants' systemic and intentional violation of federal law, state law, and the rules and regulations governing parking tickets in NYC.

109.    Any claim by Defendants in this litigation that DOF's hearings do not incentivize and exhibit actual bias would be pretextual in view of the overwhelming evidence of actual and incentivized bias cited throughout this Complaint.

### *Defendants Openly Oppose Reform*

110.    DOF Judges who do want to make fair decisions despite the risk of losing their job or receiving less work face another series of DOF constraints on their independence.  For example, DOF Judges are prohibited from removing fines like late penalties in the interest of justice.  In a 2018 City Counsel oversight hearing on the DOF Parking Violations Bureau, a widely-sponsored bill was proposed to address that very issue by granting DOF Judges "discretion to reduce or waive

---

[61] Ex. 8, Fox 5 NY, *NYC Ticket Judges*, Jul. 22, 2010; s*ee also* 2021 NYC Mayor's Management Report at 434 (indicating the "turnaround time for in-person hearings was 1.3 minutes"), https://www1.nyc.gov/assets/operations/downloads/pdf/mmr2021/2021_mmr.pdf (last accessed Nov. 12, 2021).

[62] Ex. 9, *Reform Needed at Parking Bureau*, N.Y.L.J., Sep. 9, 2010; DOF Judges' long-standing status as contract workers appears to an artifact of N.Y. Veh. & Traf. Law § 236(2)(d) ("hearing examiners shall not be considered employees of the city in which the administrative tribunal has been established.").

additional penalties" for parking violations "in the interest of justice."[63]  In response to that proposed amendment, DOF official and Defendant Jeffrey Shear testified "DOF has no way to estimate the impact the bill would have on parking ticket revenue. DOF therefore, must oppose the bill."[64]  This perfectly summarizes DOF's interest in justice.

111.    Another former DOF Judge, Dennis Boshnack, has written a number of blog posts that further document the intentional and systemic nature of bias at DOF.  For example, in a 2012 posting entitled  "Reform is Still Needed at Parking Violations Bureau," he wrote that Chief Judge Gotsopoulis, a Defendant in this action, told DOF Judges they "were no longer to abate penalties" at certain parking ticket hearings, noting Chief Judge Gotsopoulis's instruction "was contrary to" 19 R.C.N.Y. § 39-07(b).[65]

112.    Yet another former DOF Judge, writing anonymously for the New York Law Journal, indicated DOF Judges know they are working for "the Department of Finance, whose overarching mission is to collect revenue for the city," and "feel that they are subject to an irreconcilable conflict: the requirement to be loyal to the agency and the duty to adjudicate disputes independently and in a fair and impartial manner."[66]

113.    The same former DOF Judge also indicated the public's inability to access DOF parking ticket hearings "makes it easy" for DOF Judges to be "loyal to the agency."[67]

---

[63] Ex. 10, N.Y. City Council Int. No. 1066 (introduced Aug. 8, 2018 and again on Oct. 26, 2018 before being "Laid Over" by the Committee on Finance Apr. 29, 2019).
[64] Ex. 11, Apr. 29, 2019 testimony of Defendant Jeffrey Shear at 5.
[65] Dennis Boshnack (former DOF Judge), *Reform is Still Needed at Parking Violations Bureau*, New York Parking Ticket Blog, May 10, 2012, https://newyorkparkingticket.com/reform-parking-violations-bureau/, (noting DOF's "PVB disregards it's own parking ticket rules.").
[66] Ex. 9, *Reform Needed at Parking Bureau*, N.Y.L.J., Sep. 9, 2010.
[67] Ex. 9, *Reform Needed at Parking Bureau*, N.Y.L.J., Sep. 9, 2010.

114.    Defendants' 2020 city budget, which "projects $42 million in revenue from extra tickets as part of its plan to change the NYPD's budget,"[68] further underscores Defendants' commitment to manufacturing additional parking ticket revenue from violations that have not and may never occur.  This type of conduct by Defendants has and will continue to incentivize issuance and enforcement of illegal parking tickets.

115.    The intentional nature of Defendants' ongoing and intentional imposition and enforcement of improper fines and fees for parking violations is also corroborated by New York State's own December 2019 Audit of DOF's Parking Violations Operations.  That Audit Report memorializes several failures to follow the law in issuing and adjudicating parking tickets, and ultimately "found limited evidence that DOF followed the required process for obtaining default judgments against vehicle owners."[69]

116.    Defendants' illegal ticketing practices and DOF's Adjudication Division, whose own judges admit they "don't have time to dig into cases and check the law" and "often can't be fair to motorists,"[70] constitute an institutionalized due process violation and source of excessive fines.  Defendants cannot be allowed to continue preying on drivers who receive illegal tickets and suffer often-irreversible financial hardship and depreciation in the value of their vehicles as a result.[71]

---

[68] Shant Shahrigian, New York Daily News, *NYC parking tickets to increase as part of de Blasio plan to 'defund' NYPD*, Jun. 30, 2020, https://www.nydailynews.com/news/politics/ny-parking-tickets-defund-nypd-bill-de-blasio-corey-johnson-20200630-oitbahdqknauhk3jmaltzaxb4q-story.html?fbclid=IwAR1qFx2hG8sTAgu19exER5m1to-IelpTm7m5Vf-jfFiqgSCX_cPcRSx1IPY.

[69] Dec. 4, 2019 N.Y. State Comptroller Thomas P. DiNapoli's Audit Report 2017-N-8 at 9-10, addressing "Selected Aspects of Parking Violations Operations to Collect Fines and Fees" by DOF, https://www.osc.state.ny.us/state-agencies/audits/2019/12/04/selected-aspects-parking-violations-operations-collect-fines-and-fees.

[70] Ex. 8, Fox 5 NY, *NYC Ticket Judges*, Jul. 22, 2010.

[71] *See, e.g.*, James DeHaven, *Las Vegas' Low-Income Areas Hit Harder by Parking Tickets, Analysis Shows*, L.V. REV.-J., Jan. 17, 2015, https://www.reviewjournal.com/local/local-lasvegas/las-vegas-low-income-areas-hit-harder-by-parking-tickets-analysis-shows/; U.S. Commission on Civil Rights, *Targeted Fines and Fees Against Low-Income Communities of Color: Civil Rights and Constitutional Implications,* Sept. 2017, https://www.usccr.gov/files/pubs/2017/Statutory_Enforcement_Report2017.pdf.

117.    In sum, drivers disputing illegal tickets receive an unfair "hearing" at an unfair tribunal before DOF Judges with actual bias against and interest in the outcome of drivers' ticket disputes.  In fact, most drivers, like Mr. Oles, are never notified when these approximately one-minute[72] "hearings" occur or offered an opportunity to participate in them.

### *Illegal Tickets Impose Excessive Fines*

118.    Illegal parking fines issued by Defendants are punitive in nature and not, as required by relevant law, purely remedial or otherwise reasonably related to actual costs associated with collecting fines for one or more alleged parking violations, and the fines assessed for unaltered vehicles have no cognizable connection to Defendants' actual costs or legitimate interests.

119.    Such civil fines are grossly disproportional to the gravity of parking violations that never even occurred and, in any event, would not permit imposition of fines in multiples of statutory fine limits, which unjustly enrich Defendants and constitute unconstitutional, illegal, and unconscionable punitive fines that are in no way proportional or otherwise related to Defendants' administrative costs.

## **RELIEF SOUGHT**

120.    This Complaint brings claims under 42 U.S.C. § 1983 for violations of Plaintiffs' rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and the New York State Constitution, which prohibits identical conduct,[73] for injuries and damages caused by the Defendants in their official capacities as employees, agents, and/or servants of the City, including without limitation damages resulting from Defendants' practice of illegally and

---

[72] *See, e.g.*, Ex. 8, Fox 5 NY, *NYC Ticket Judges*, Jul. 22, 2010 ("up to 70 cases per hour," *i.e.*, 51 *seconds* per "hearing"); 2021 NYC Mayor's Management Report at 434 (indicating "turnaround time for in-person hearings was 1.3 minutes"), https://www1.nyc.gov/assets/operations/downloads/pdf/mmr2021/2021_mmr.pdf (last accessed Nov. 12, 2021).
[73] N.Y. Const, Article I, §§ 5–7.

knowingly compelling putative class members to permanently damage and depreciate the value and utility of their vehicles.

121.    This Complaint also seeks declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure implementing that Act.

122.    This Complaint also seeks rescission of all illegal fines imposed by Defendants and collected from them with interest and an order enjoining imposition of fines that are unauthorized by or exceed the amount authorized by statute,[74] dismissing unpaid illegal tickets, enjoining the issuance of tickets in violation of federal, state, and local law, and any other relief this Court deems proper.

## CLASS ALLEGATIONS AND DEFINITION

123.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following:

> **"Unaltered Commercial Vehicle" Summons Subclass:** All vehicle owners/operators and other persons and entities who, on or after November 12, 2013, received at least one NYC "unaltered commercial vehicle"[75] summons.[76]

> **"Companion Summons" Subclass:** All vehicle owners/operators and other persons and entities who, on or after November 12, 2013, received at least one NYC summons predicated upon non-commercial vehicle status *and*, within seven (7) calendar days of said non-commercial summons' issuance, *also* received at least one

---

[74] 19 R.C.N.Y. § 39-05 "Amount of Fines" contains a specific schedule of fines for specific types of parking violations, and states "Except as otherwise provided for the specific violations within the Restricted Area, the following schedule of fines shall apply to violations listed below," and no part of § 39-05 allows Defendants to arbitrarily exceed the fine amounts authorized by stacking "companion summonses" to double, triple, or otherwise multiply the authorized fine limit.

[75] "Unaltered commercial vehicle" summonses are also known as Violation Code 82 tickets, Violation Code 82 summonses, and/or "unaltered vehicle" summonses.  To the extent Defendants have issued "unaltered commercial vehicle" summonses pursuant to any other authorities or sections of R.C.N.Y., such tickets are included within the Class definition.

[76] Summonses are also commonly referred to as parking ticket(s) and/or NYC Notice(s) of Parking Violation.

"companion summons" predicated upon the same vehicle's commercial status.[77]

(the "Class").

124.    This Class is so numerous that joinder of all members is impracticable.  Although the precise size of the Class (and any separate classes or sub-classes that may be appropriate under Rule 23(c)(5)) is presently unknown to Plaintiffs, this information is easily obtainable from Defendants' records.  It is estimated that the Class consists of at least tens of thousands of owners and operators of vehicles that have been ticketed in the City.

125.    There are questions of law or fact common to the Class, which predominate over any questions affecting only individual Class members.  Among the principal common and predominating questions of law or fact in this case are the following:

      a.    whether the City, through DOF, NYPD, related departments, bureaus, and agencies, and/or the individual Defendants, authorized, implemented, followed and/or permitted policies, practices, and procedures which resulted in the issuance and enforcement of improper "unauthorized commercial vehicle" parking tickets, either alone or in combination with improper "companion summonses" predicated upon conflicting allegations that the same vehicle is both commercial and non-commercial;

---

[77] Examples of summonses predicated upon non-commercial vehicle status include **Violation Code 31** summonses, which prohibit standing of a *non-commercial* vehicle in a commercial metered zone, such as Ex. 2, Jul. 6, 2021 Oles Summons No. 8912973009 (Violation Code 31 summons alleging violation of 34 R.C.N.Y. 4-08(1)(3)(ii)).  Examples of "companion summons[es]" predicated upon a vehicle's *commercial* status include summonses bearing **Violation Codes 78, 82, 84, and/or 85**, which are respectively described by DOF as summonses prohibiting: "Parking a Commercial Vehicle on a residential street," "Standing or parking a Commercial Vehicle unless [altered]" (such as Ex. 1, Oles Summons No. 8912972996), "Parking a Commercial Vehicle on any city street with its platform lift in the lowered position," and "Parking a Commercial Vehicle more than 3 hours, where parking is allowed."  Violation Code descriptions appearing in this footnote can be found at https://www1.nyc.gov/site/finance/vehicles/services-violation-codes.page (last accessed Nov. 12, 2021).

b.  whether NYPD and other agencies authorized to issue NYC parking tickets violated the City's own parking laws and regulations by systematically issuing and/or enforcing illegal parking tickets;

c.  whether Defendants deprived Class members of their Constitutional rights through the imposition of fines and/or penalties for illegal parking tickets; and

d.  what and when City officials knew about illegal ticketing policies and practices.

126.   Whether Defendants violated Section 1983 and other laws can easily be determined from Defendants' automated systems and electronic records, programmed to store and retrieve the types of data and information referenced herein.

127.   Plaintiffs' claims are typical of the claims of the Class, which arise from the same operative facts and are based on the same legal theories.  Moreover, there are no defenses available to Defendants that are unique to Plaintiffs.

128.   Plaintiffs will fairly and adequately protect the interests of the Class and are committed to vigorously pursuing this litigation.   Further, Plaintiffs have retained counsel experienced in handling large complex actions involving thousands of parties, substantial sums of money, large-scale eDiscovery, and complicated legal, factual, and data science issues.  Neither Plaintiffs nor their counsel have any interests which are antagonistic to or conflict with those of the Class or which might cause them to not vigorously pursue this action.

129.   This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for the parties opposing any Class, as well as a risk of adjudication with respect to individual members, which would as a practical matter be dispositive of the interests of

other members not parties to the adjudications or substantially impede or impair their ability to protect their interests.

130.    A class action is a superior method for the fair and efficient adjudication of this controversy.  The interests of Class members in individually controlling the prosecution of separate claims against Defendants may be small given the amount of the actual damages at issue for each Class member and the burdens on their time and resources, but which in the aggregate are estimated to involve tens of millions of dollars.  Management of the action as a class action is likely to present significantly fewer difficulties than those presented by the assertion of tens of thousands of individual claims.  The identities of Class members can easily be obtained from Defendants' computerized and electronic records.

## COUNT 1

### *42 U.S.C. § 1983 — Violations of United States Constitution*

131.    Plaintiffs repeat and re-allege each and every allegation set forth above as though fully set forth in complete detail below.

132.    Defendants are persons within the meaning of 42 U.S.C. § 1983.

133.    Defendants, acting under color of state law, subjected Plaintiffs and other Class members to the foregoing acts and omissions without due process of law and in violation of 42 U.S.C. § 1983, thereby depriving Plaintiffs and the Class of their rights secured by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, including without limitation, deprivation of the following Constitutional rights:

> a) freedom from excessive fines, unreasonable seizures, and unlawful taking of property;
>
> b) freedom from deprivation of property without due process of law; and

c) equal protection under the law.

134.    Plaintiffs and other Class members have a property interest in their vehicles and the monies that Defendants have and/or are attempting to unlawfully appropriate from them as purported fines under the illegal ticketing schemes described herein.

135.    As a direct and proximate result of Defendants' deprivation of their federal Constitutional rights, Plaintiffs and the Class have suffered damages in the manner and amounts set forth above.

## COUNT 2

### *N.Y. Const., Article I, §§ 5 to 7 — Violations of New York State Constitution*

136.    Plaintiffs repeat and re-allege each and every allegation set forth above as though fully set forth in complete detail below.

137.    Defendants, acting under color of state law, subjected Plaintiffs and other Class members to the foregoing acts and omissions without due process of law and in violation of the New York State Constitution, thereby depriving Plaintiffs and the Class of their rights secured by Article I, Sections 5 to 7 of the New York State Constitution, including without limitation, deprivation of the Constitutional rights of:

a) freedom from excessive fines, unreasonable seizures, and unlawful taking of property;

b) freedom from deprivation of property without due process of law; and

c) equal protection under the law.

138.    Plaintiffs and other Class members have a property interest in the vehicles they drive and monies that Defendants have and/or are attempting to unlawfully appropriate from them as purported fines under the illegal ticketing schemes described herein.

139.    As a direct and proximate result of Defendants' deprivation of their state Constitutional rights, Plaintiffs and the Class have suffered damages in the manner and amounts set forth above.

## COUNT 3

### *28 U.S.C. §§ 2201 and 2202 — Declaratory Judgment*

140.    Plaintiffs repeat and re-allege each and every allegation set forth above as though fully set forth in complete detail below.

141.    Plaintiffs seek declaratory relief and judgment as matters alleged herein are subject to disposition as a matter of law pursuant to 28 U.S.C. §§ 2201 and 2202.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all matters so triable.

WHEREFORE, Plaintiffs demand judgment against Defendants on the claims alleged herein as well as the following additional and further relief:

a.  compensatory damages to Plaintiffs and the Class for their injuries suffered by reason of Defendants' unlawful conduct alleged herein with interest;

b.  an Order enjoining Defendants' unlawful conduct alleged herein and requiring Defendants' to utilize electronic ticketing devices that automatically prevent issuance of Violation Code 82 "unaltered commercial vehicle" tickets, either alone, as part of, or in addition to "companion summonses" alleging objectively impossible and/or mutually violations predicated upon the same vehicle's commercial and non-commercial status, such as summons(es) bearing Violation Code 31 in combination with summons(es) bearing Violation Code 78, 82, 84, and/or 85.

c.  a declaration that Defendants' conduct violated Plaintiffs' and the Class' federal
    and state Constitutional and civil rights;

d.  attorneys' fees under 42 U.S.C. § 1988(b) and other provisions of law;

e.  the costs and expenses of this action; and

f.  such other and further relief as the Court deems just, proper, and appropriate.


Dated:  New York, New York
        November 12, 2021


BY: _____

LOWER LAW, PLLC
Robert B. Lower
535 Fifth Avenue, 4th Floor
New York, New York 10017
Tel. (646) 398-1018
rlower@lowerlaw.com

FARBER SCHNEIDER FERRARI LLP
261 Madison Avenue, 26th floor
New York, New York 10016
Daniel J. Schneider
Tel. 212-972-7040
dschneider@fsfllp.com

*Attorneys for Plaintiffs and the Putative Class*