UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                        :
WARD OLES, et al.,                           :
                       Plaintiffs,  :
                                  :            21 Civ. 9393 (LGS)
           -against-             :
                                  :        **OPINION AND ORDER**
THE CITY OF NEW YORK, et al.,       :
                       Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

        Plaintiffs Ward Oles and Patricia Reed, individually and on behalf of a putative class of others, bring this action against Defendants City of New York (the "City"), acting through the New York City Police Department ("NYPD") and New York City Department of Finance ("DOF"), Mary Gotsopoulis, Jeffrey Shear and Jane and John Does 1-10.  Plaintiffs allege violations of their rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983, and under Article I §§ 5-7 of the New York Constitution.  Defendants move to dismiss the Complaint.  For the reasons below, the motion is granted.

## I.    BACKGROUND

        The following facts are taken from the Complaint and are assumed to be true for purposes of this motion, *see R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 512 (2d Cir. 2020), except as otherwise explained.

        Plaintiff Ward Oles drives an unaltered pickup truck owned by his mother, Plaintiff Patricia Reed.  Plaintiffs' truck is registered to Mrs. Reed in New York with commercial license plates.  On July 6, 2021, Mr. Oles drove to Manhattan to pick up a couch and, while doing so,

parked in a zone designated for "COMMERCIAL VEHICLES."  Mr. Oles was not compensated for picking up the couch, and he was not engaged in commercial activity.

During the ten minutes he was parked, Mr. Oles received two parking tickets for violations of §§ 4-08(k)(1) and 4-08(*l*)(3)(ii) of Title 34 of the Rules of the City of New York ("RCNY"), each for $115.  Section 4-08(*l*)(3)(ii) prohibits standing or parking non-commercial vehicles in designated commercial parking areas.  Section 4-08(k)(1) prohibits standing or parking a vehicle with commercial license plates that does not have "the name and address of the owner . . . plainly marked on both sides" and "all seats and rear seat fittings, except the front seats, removed."  The latter requirement does not apply to Plaintiffs' pickup truck because, "for vehicles designed with a passenger cab and a cargo area separated by a partition, the seating capacity within the cab shall not be considered in determining whether the vehicle is properly altered."  § 4-01(b) (definition of "Commercial vehicle", subparagraph (i)).

Mr. Oles challenged both tickets by entering pleas of "Not Guilty," requesting hearings and submitting statements explaining why he believed both should be dismissed.  On August 25, 2021, two administrative law judges ("ALJs") found him "guilty" of the offenses charged by the two tickets.  Mr. Oles paid both fines, plus $4.60 in processing fees, for a total of $234.60.  The Complaint does not allege that Mr. Oles filed an administrative appeal or a state court proceeding to challenge the administrative action.

Parking tickets are issued by the NYPD and other City agencies.  Disputed tickets are adjudicated by ALJs in the Parking Violations Bureau within DOF's Adjudication Division.  At least some ALJs are contract attorneys.  A driver who receives an adverse decision can seek review by an Appeals Board consisting of ALJs.  DOF is charged with collecting revenue for the City.  If a parking ticket is upheld and unpaid, penalties and interest may be assessed.  After a

certain number of violations or if a certain amount owed is outstanding, vehicles may be booted, towed, impounded and/or sold.  Defendant Shear oversees DOF's Collections and Parking Summons Adjudication Divisions, and Defendant Gotsopoulis is DOF's Chief ALJ.

According to one media report, ALJs are required to adjudicate tickets quickly, receive less work if they do not meet quotas and are required to report the number of tickets that are not upheld.  Some ALJs have stated that "[j]ustice and fairness is not at a high level of priority," and that ALJs "don't have time to dig into cases and check the law" and "often can't be fair to motorists."  One stated goal of DOF is to reduce the number of tickets that are not upheld, consistent with its function of collecting revenue.  DOF opposed a legislative proposal to grant ALJs additional discretion to waive penalties in the interest of justice, and one former ALJ stated that his superior, Defendant Gotsopoulis, instructed ALJs not to exercise their authority under a particular City parking rule to abate penalties.

## II.    STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations."  *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted).  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020).  It is not enough for the Complaint

to allege facts that are consistent with liability; it must "nudge[]" claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). To survive dismissal, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).

## III.   DISCUSSION

### A.   Substantive Due Process

Plaintiffs' claims are dismissed to the extent they rely on alleged violations of substantive due process, because the parking tickets at issue would not violate the Constitution even if they violated state or local law, and Plaintiff has not alleged that these tickets even violate the latter. Contrary to Plaintiffs' arguments, the parking rules under which Plaintiff was fined do not violate the right to travel, are not void for vagueness and are not preempted by federal law.

#### 1.   The Parking Tickets at Issue Would Not Violate Due Process, Even If They Violated State or Local Law.

Even if the parking tickets at issue were found to violate state or local law, the Complaint does not allege facts sufficient to violate Plaintiffs' constitutional right to due process. "The first step in substantive due process analysis is to identify the constitutional right at stake," and if any such right has been infringed, "the plaintiff 'must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021); *see Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of N.Y.*, 746 F.3d 538, 545 (2d Cir. 2014) (requiring complaint to plead that Plaintiffs "had a valid property interest" and "defendants infringed on

that property right in an arbitrary or irrational manner"); *Kampfer v. Argotsinger*, 856 F. App'x
331, 334 (2d Cir. 2021) (summary order) (same).

To the extent the Complaint relies on Defendants depriving Plaintiffs of $234.60 paid in
fines, courts have doubted whether "a property interest so modest" as a parking ticket is
constitutionally protected.  *Leder v. Am. Traffic Sols., Inc.*, 630 F. App'x 61, 62 (2d Cir. 2015)
(summary order); *see also Leder v. Am. Traffic Sols., Inc.*, 81 F. Supp. 3d 211, 224 (E.D.N.Y.
2015) (collecting cases); *Kelly v. Rice*, 375 F. Supp. 2d 203, 209 (S.D.N.Y. 2005) ("Nothing
about the issuance of a parking ticket implicates the rarely-used doctrine of 'substantive due
process.'  Plaintiff has not alleged any violation of either a property or liberty interest . . . .").
But even assuming a cognizable property interest, the Complaint does not sufficiently allege a
due process violation.

"Substantive due process protects against government action that is arbitrary, conscience-
shocking, or oppressive in a constitutional sense, but not against government action that is
incorrect or ill advised."  *Cunney v. Bd. of Trs.*, 660 F.3d 612, 626 (2d Cir. 2011); *accord Leder*,
630 F. App'x at 62; *United States v. Ash*, 464 F. Supp. 3d 621, 632 (S.D.N.Y. 2020).  Even if
Plaintiffs' tickets violated state law, "substantive due process does not entitle federal courts to
examine every alleged violation of state law, especially ones that, while perhaps vexatious, are
more routine than egregious."  *Kuck v. Danaher*, 600 F.3d 159, 167 (2d Cir. 2010); *accord
Leder*, 630 F. App'x at 63; *Marom v. Town of Greenburgh*, No. 18 Civ. 7637, 2020 WL 978514,
at *12 (S.D.N.Y. Feb. 28, 2020).

### 2.   The Parking Tickets at Issue Were Not "Illegal" or "Impossible."

The Complaint falls far short of stating a claim because it does not even allege sufficient
facts to conclude that the parking tickets were incorrect.  Plaintiffs received a ticket for violating

a rule that states, "[W]here signs are posted regulating the use of the curb by commercial vehicles it shall be unlawful to stand a vehicle in any space on a block unless such vehicle is a 'commercial vehicle' as defined in" § 4-01(b)(i) of Title 34.  34 RCNY § 4-08(*l*)(3)(ii).  The Complaint alleges that Plaintiffs' truck was parked in a space designated for "COMMERCIAL VEHICLES" and is not a "'commercial vehicle' as defined in" § 4-01(b)(i) because it is "unaltered."  Based on the allegations of the Complaint, this ticket was proper.

Plaintiffs also received a ticket for violating a different rule that makes it a violation to "stand or park a vehicle with commercial plates in any location unless" it has been altered as required by § 4-01(b)(i).  34 RCNY § 4-08(k)(1).  The Complaint alleges that Plaintiffs' truck bore "commercial plates," was "unaltered" and therefore did not meet the definition of a commercial vehicle in § 4-01(b)(i), and was parked.  Accordingly, this ticket was also proper.  There is nothing inconsistent about the violation of both rules and the issuance of both tickets.

The Complaint's allegation that the tickets exceed the state statutory maximum fines is incorrect.  Each of Plaintiffs' two $115 tickets fall under the statutory maximum, because each alleges a violation of a rule against "stopping or standing," for which "monetary penalties shall not exceed one hundred dollars," plus a $15 surcharge.  *See* N.Y. Veh. & Traf. Law §§ 237(2)(a)(i) (setting maximum fines at $100 for "stopping or standing" violations "in a city with a population of one million or more"), 1809-A(1) (requiring $15 surcharge in the same circumstances); N.Y.C. Admin. Code § 19-203 (incorporating state-law maximums for parking fines); 19 RCNY § 39-05 (setting city parking fine schedule); 34 RCNY §§ 4-08(k)(1); 4-08(*l*)(3)(ii).

The tickets must be considered individually because the rules prohibit different conduct, and each ticket penalized a distinct "violation."  *See* N.Y.C. Admin. Code § 19-203 (setting

maximum fines for "each parking violation"); N.Y. Veh. & Traf. Law § 237 (same); *Torres v. City of New York*, No. 20 Civ. 10210, 2022 WL 743926, at *5-7 (S.D.N.Y. Mar. 11, 2022).  The City did not act arbitrarily in defining two violations that could occur simultaneously -- parking a non-commercial vehicle in a commercial space, and doing so with commercial plates.  The City rationally could conclude that drivers with commercial plates are more likely to park improperly in a commercial space, knowingly or not, and thus require greater deterrence.

The Complaint's conclusory allegation that "unaltered commercial vehicle" tickets "have no discernible relation to the regulation of parking in the City, impose substantial burdens on interstate commerce, and fail to promote public health, welfare, or safety" is not supported by the facts alleged.  The "unaltered commercial vehicle" rule plainly regulates parking by limiting where one may "stand or park" a vehicle.  The rule rationally promotes public welfare by controlling which vehicles may use designated commercial parking spots on congested streets in a large, crowded city.  And the alleged burden on interstate commerce is inapposite, since the Complaint alleges that Plaintiffs are New York residents and that Mr. Oles was not engaged in commercial activity when he was ticketed.

### 3. Defendants' Parking Rules Do Not Infringe the Right to Travel.

For the first time in opposition to the motion to dismiss, Plaintiffs attempt to reframe the infringed interest as a liberty interest in "freedom of movement" and "travel."  This argument need not be considered because it is unconnected to any allegations in the Complaint, and "a party is not entitled to amend its complaint through statements made in motion papers."  *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *accord Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 246 (S.D.N.Y. 2021).

Even if it were grounded in the Complaint, this argument is unavailing.  Enforcement of the parking rules at issue does not burden the right to travel.  "[A] statute implicates the constitutional right to travel when it actually deters such travel, or when impedance of travel is its primary objective, or when it uses any classification which serves to *penalize* the exercise of that right," but "[m]erely having an effect on travel is not sufficient to raise an issue of constitutional dimension."  *Soto-Lopez v. N.Y. City Civil Serv. Comm'n*, 755 F.2d 266, 278-79 (2d Cir. 1985) (citations omitted); *accord N.Y. State Rifle & Pistol Ass'n v. City of New York*, 883 F.3d 45, 66-67 (2d Cir. 2018).  "[M]inor restrictions on travel simply do not amount to the denial of a fundamental right."  *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007); *accord Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 258 (2d Cir. 2013).  The ALJ upheld Plaintiff's "unaltered commercial vehicle" ticket and said: "Respondent's claim is rejected because the traffic rules require vehicles parked in a commercial meter zone to have commercial lettering as indicated in traffic rules. . . . Respondent is found guilty because vehicle was not a properly altered commercial vehicle as required, when parking at this location."  Plaintiffs received one ticket for parking their unaltered truck in a commercial parking space, and one ticket for doing so with commercial plates, not for traveling to New York City.  The right to travel at most "protects *movement between places* and has no bearing on *access* to a particular place," and does not provide "a substantive right to cross a *particular* parcel of land, enter a *chosen* dwelling, or gain admittance to a *specific* government building," or to a specific parking space.  *Williams v. Town of Greenburgh*, 535 F.3d 71, 75-76 (2d. Cir. 2008); *accord Urbina v. City of New York*, 672 F. App'x 52, 55 (2d Cir. 2016) (summary order).

### 4.   Defendants' Parking Rules Are Not Void for Vagueness.

Plaintiffs assert a void-for-vagueness challenge for the first time in opposition to Defendants' motion.  This argument need not be addressed, as discussed above, but would fail even if grounded in the Complaint.  The "'void for vagueness' doctrine is chiefly applied to criminal legislation," and laws like parking rules "with civil consequences receive less exacting vagueness scrutiny." *Reynolds v. Quiros*, 25 F.4th 72, 96 (2d Cir. 2022).  The parking rules at issue are not vague under any level of scrutiny as they are defined "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.*  Fair notice requires only that a person "of ordinary intelligence" have "a reasonable opportunity to understand what conduct" is prohibited. *Id.*  A reasonable opportunity requires that the law be clear to one who reads it, not that it be obvious even to someone who has not read it. *See United States v. Holcombe*, 883 F.3d 12, 17 (2d Cir. 2018) ("No one could read the statute and Guidelines and reasonably come away thinking that he did not need to update his registration after 18 months.").

### 5.   Defendants' Parking Rules Are Not Preempted by Federal Law.

Plaintiffs assert a preemption argument for the first time in opposition to the motion to dismiss.  As noted, the argument may be disregarded as untethered to the Complaint, and in any event, fails on the merits.  Plaintiffs allege that the City vehicle alteration rule is prohibited by a federal statute that grants federal authority over intrastate transportation. *See* 49 U.S.C. § 14501(c)(1).  This argument is incorrect because the statute proscribes state and local regulation "related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." *Id.*  The City's rule requires certain motor vehicle alterations to park in certain spaces, which plainly is

9

not within the federal statute's proscription.  It is therefore unnecessary to address exceptions to the federal proscription.

Plaintiffs also allege that the City's rule is prohibited by a federal statute on identification of vehicles.  *See* 49 U.S.C. § 14506(a).  That argument is also incorrect because the federal law limits state and local regulation of "motor carrier[s], motor private carrier[s], freight forwarder[s], or leasing company[ies]."  *Id*.  The Complaint alleges that Mr. Oles was not engaged in commercial activity or being compensated when he received the tickets, and thus Plaintiffs were not within any of those covered categories.  *See* 49 U.S.C. § 13102(8), (14), (15) (defining the categories subject to § 14506 based on, *inter alia*, commercial activity and compensation, other than "leasing company," which implies commerce or compensation).

Even if the federal statute had any preemptive force as applied to Plaintiffs, it would not provide a defense to Plaintiffs' parking tickets.  Federal law permits state and local regulations that are consistent with "section 390.21 of title 49, Code of Federal Regulations."  49 U.S.C. § 14506(a).  That federal regulation, similar to the City's rule, requires certain vehicles to display prominently the name of the operator on both sides of the vehicle.  *See* 49 C.F.R. § 390.21.  Any minor differences in the specific requirements of federal and local rules would not have changed the outcome of Plaintiffs' adjudication, because Plaintiffs allege that their truck was completely "unaltered."  Even if Plaintiffs were affected by a local rule that was preempted, such an error would not be so arbitrary or conscience-shocking as to offend substantive due process.  *See Hurd*, 984 F.3d at 1087; *see also Palmer v. City of Saratoga Springs*, 180 F. Supp. 2d 379, 387 (N.D.N.Y. 2001) (holding "although not in line with [federal law]" a local action that was preempted by federal law "falls far short of being 'outrageously arbitrary'" as required for a substantive due process violation).

### B.     Procedural Due Process

Plaintiffs' claims are dismissed to the extent they rely on alleged violations of procedural due process.  Defendants' two-tier hearing procedure, backed by state Article 78 proceedings, has repeatedly been found to afford more process than the U.S. Constitution requires.  The Complaint does not allege that Plaintiffs received less process than state and local law provide, because (a) the Complaint does not allege sufficient facts to conclude that Defendants' ALJs are biased, (b) any such bias would be cured by the availability of Article 78 proceedings and (c) the Complaint does not sufficiently allege that an Article 78 suit was unavailable to Plaintiffs.

### 1.     Defendants' Parking Ticket Adjudication Process Provides Due Process.

Plaintiffs' claim that Defendants denied them procedural due process in issuing and upholding his parking tickets is dismissed because the Complaint does not allege that Plaintiffs received less process than they were due.  "In a § 1983 suit brought to enforce procedural due process rights, a court must first determine whether a property interest is implicated, and then, if it is, determine what process is due before the plaintiff may be deprived of that interest."  *Nnebe v. Daus*, 931 F.3d 66, 80 (2d Cir. 2019).  To determine if Plaintiffs received due process, "the court must engage in the familiar three-factor test first articulated in *Mathews v. Eldridge*," and balance "(1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value (if any) of alternative procedures; [and] (3) the government's interest, including the possible burdens of alternative procedures."  *Barrows v. Becerra*, 24 F.4th 116, 140 (2d Cir. 2022) (alteration in original) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  It is undisputed that Plaintiffs had a property right in the money they were ordered to pay, but "courts have repeatedly affirmed that the City's parking ticket system, combined with New York's Article 78 procedures, 'provide[s] parking violators . . . with more

11

than sufficient process to satisfy the Constitution.'"  *Torres*, 2022 WL 743926, at *4 (alteration

in original) (collecting cases).

The Complaint alleges that Mr. Oles did not have an opportunity to attend the hearing,

but that he nonetheless contested his tickets online and submitted arguments that the ALJs

considered, consistent with the City's often-upheld administrative procedures.  *See id.* at *4-5; 19

RCNY § 39-19 (permitting "Hearings by Website"); *Dispute a Ticket*, N.Y.C. Dep't of Fin.,

https://www1.nyc.gov/site/finance/vehicles/dispute-a-ticket.page (last visited June 1, 2022).

Particularly where they are backstopped by full adversarial proceedings in state court, pre-

deprivation proceedings "need not be elaborate" so long as they offer "notice and an opportunity

to respond" to the allegations, which the Complaint alleges Plaintiffs had here.  *Rivera-Powell v.*

*N.Y.C. Bd. of Elections*, 470 F.3d 458, 467 (2d Cir. 2006) (quoting *Cleveland Bd. of Educ. v.*

*Loudermill*, 470 U.S. 532, 545-46 (1985)); *accord Robinson v. N.Y.C. Transit Auth.*, No. 19 Civ.

1404, 2021 WL 4523675, at *9 (S.D.N.Y. Sept. 30, 2021).  The Complaint does not even allege

that Mr. Oles tried to appeal his ticket, even though that additional opportunity to be heard was

available.

### 2.  Plaintiffs Received the Constitutionally Sufficient Process Provided by State and Local Law.

#### a.  The Complaint Does Not Sufficiently Allege ALJ Bias.

The Complaint does not sufficiently allege judicial bias.  The sole allegation that pertains

directly to the adjudication of Plaintiffs' parking tickets is legally incorrect, and the Complaint's

allegations of widespread, structural bias are insufficient to support the claim.

The Complaint's only allegation of bias on the part of the ALJs who adjudicated

Plaintiffs' tickets is that ALJ Resch-Weinman's bias is "apparent in the tortured opinion[]" that

she wrote.  This allegation is disregarded because it rests on the incorrect assertion that the ALJ

mischaracterized Mr. Oles's argument as, "the cited regulation was not in effect . . . since they live[d] outside New York City."  This description was fair because Mr. Oles did assert that "[t]here is no state requirement for putting lettering on my vehicle despite the commercial tags . . . ."  The Complaint also alleges more generally that the tickets are so clearly erroneous that only a deeply biased ALJ could uphold them.  As discussed in Part III.A.2 above, this allegation is incorrect as a matter of law.

The Complaint also alleges structural problems with the incentives of ALJs generally and includes statements by former ALJs supporting the inference that those incentives lead to unfairness toward drivers.  These allegations of structural bias do not overcome the "presumption of honesty and integrity in those serving as [agency] adjudicators."  *Est. of Landers v. Leavitt*, 545 F.3d 98, 113 (2d Cir. 2008) (alteration in original) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)); *accord Almaklani v. Trump*, 444 F. Supp. 3d 425, 431 (E.D.N.Y. 2020).  This presumption can only "be rebutted by a showing of disqualifying interest, either pecuniary or institutional."  *Wolkenstein v. Reville*, 694 F.2d 35, 42 (2d Cir. 1982) (citations omitted); *accord Koam Produce, Inc. v. United States*, 269 F. App'x 35, 37 (2d Cir. 2008) (summary order); *Torres*, 2022 WL 743926, at *7-8.  That some ALJs are contract workers for DOF, which has a general institutional interest in the collection of fines, is insufficient, because "many agency adjudicative authorities are appointed by the agency itself, and without some *specific* showing of conflict of interest or reason for disqualification, we assume they are unbiased."  *Doolen v. Wormuth*, 5 F.4th 125, 135 (2d Cir. 2021) (citing *Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982)) (emphasis added); *accord Torres*, 2022 WL 743926, at *8 (collecting cases rejecting this argument in the context of the City's parking ticket regime).

13

The Complaint's allegations that ALJs are incentivized to process tickets quickly does not support an inference that ALJs are therefore more likely to uphold tickets.  The Complaint's use of the conclusory label "guilty quotas" is unsupported by the facts alleged.  The Complaint alleges neutral productivity targets, which serve the goals of due process by ensuring an efficient means of resolving parking tickets while also offering an opportunity to be heard.  *Nash v. Bowen*, 869 F.2d 675, 681 (2d Cir. 1989) (approving of efficiency goals because "the decisional independence of ALJs was not in any way usurped by . . . monthly production goals").  The City has a legitimate interest in collecting and providing the public with data on the functioning of its parking enforcement bureaucracy.  *See* N.Y.C. Admin. Code § 19-216(b) (requiring annual report, published on DOF's website, including data on tickets upheld and rejected).

### b.  Any Bias by ALJs Would be Cured by Article 78 Proceedings.

Even if the Complaint sufficiently alleged bias at the administrative hearing stage, Article 78 proceedings provide "a wholly adequate post-deprivation hearing for due process purposes," even if the original adjudicator was biased.  *See Green v. Dep't of Educ. of N.Y.*, 16 F.4th 1070, 1078 (2d Cir. 2021) (internal quotation marks omitted); *Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir. 2001) (rejecting a due process claim based on alleged bias in a pre-termination hearing); *Torres*, 2022 WL 743926, at *9 (collecting cases).  Even if Defendants' alleged bias was pursuant to established policy as alleged, that is irrelevant where pre-deprivation process is also available.  *Locurto*, 264 F.3d at 175 ("A distinction that some of the above cases typically involved random and unauthorized conduct, rather than conduct according to predetermined rules, is immaterial.").  Where acts are "random and unauthorized," due process is satisfied by post-deprivation review *alone*.  Deprivations pursuant to established practices require "notice and a limited opportunity to be heard" prior to the deprivation, both of which are clearly

14

provided by the ALJ hearing and appeals process.  *Id.* at 171; *accord Salahuddin v. City of Mt. Vernon*, No. 20 Civ. 7021, 2022 WL 564002, at *3 (S.D.N.Y. Feb. 24, 2022).  Plaintiffs suggest that *Locurto* may not be good law because one unpublished summary order of the Second Circuit, *Rothenberg v. Daus*, 481 F. App'x 667, 675 (2d Cir. 2012), questioned the application of *Locurto* in light of *Ward v. Village of Monroeville*, 409 U.S. 57 (1972).  However, the Second Circuit in *Green*, a precedential decision decided just months ago, stated that "due process does not require that pre-termination hearings occur before a neutral adjudicator," citing *Locurto*.  *See Green*, 16 F.4th at 1077.

### c.  The Complaint Does Not Sufficiently Allege that Article 78 Proceedings Were Unavailable to Plaintiffs.

The arguments that Article 78 proceedings were unavailable to Plaintiffs are unpersuasive.  The Complaint's allegation that Plaintiffs did not have specific notice of the availability of Article 78 proceedings, because Defendants stopped providing such notice, does not make those proceedings unavailable.  "[T]he federal procedural due process guarantee does *not* require state officials to inform individuals of all the procedural guarantees they enjoy under state law," when they "can turn to . . . public sources to learn about the remedial procedures available to" them.  *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 192 (2d Cir. 2020) (citing and quoting *City of W. Covina v. Perkins*, 525 U.S. 234, 240-41 (1999)); *Torres*, 2022 WL 743926, at *11 (collecting cases).

The argument that an Article 78 proceeding is inadequate because it may be more expensive than paying the ticket also misses the mark.  For the reasons discussed above, "Plaintiffs did not plausibly allege that the pre-deprivation proceedings provided inadequate due process protections or that Defendants skirted the procedures in those proceedings."  *Torres*, 2022 WL 743926, at *11.  In that circumstance, it is unnecessary to "decide whether the

availability of an Article 78 proceeding, standing alone, would be sufficient to comply with the Due Process Clause where the amount in controversy is low compared with the expense and complexity of such a proceeding." *Id.* (quoting *Bens BBQ, Inc. v. Cnty. of Suffolk*, 858 F. App'x 4, 7 (2d Cir. 2021) (summary order)).  The availability of a pre-deprivation process to challenge and appeal parking fines, in combination with Article 78 proceedings, more than satisfies the requirements of due process.  *Cf. Bens BBQ, Inc.*, 858 F. App'x at 7 ("The written appeal process in addition to the availability of the Article 78 proceeding reduces the risk of erroneous deprivation such that the *Mathews* test does not require additional procedures.").

Plaintiffs cannot bring a federal class action in lieu of a presumptively adequate state proceeding simply because "the cost of bringing an Article 78 action is likely more than the cost of" the challenged action.  *35-41 Clarkson LLC v. N.Y.C. Housing Auth.*, No. 11 Civ. 6770, 2012 WL 5992094, at *7 (S.D.N.Y. Mar. 30, 2012) (holding that "the premise of any class action in federal court is that the class representatives have stated a claim for relief," and they "have not" where "a post-deprivation state-court action is sufficient to satisfy due process").  Plaintiffs in particular cannot complain of any defect in the Article 78 process because the Complaint does not allege that they administratively appealed their tickets, which is both a prerequisite to an Article 78 proceeding under CPLR § 7801(1) and a presumptively adequate pre-deprivation process that could have obviated the need to seek relief under Article 78.

### C.    Excessive Fines

Plaintiffs' Eighth Amendment claim is dismissed because the fines at issue are not excessive.  The "two-step inquiry for determining whether a financial penalty is excessive" asks first, "whether the Excessive Fines Clause applies at all," and second, "whether the challenged forfeiture is unconstitutionally excessive."  *United States v. Viloski*, 814 F.3d 104, 108-09 (2d

Cir. 2016).  Courts evaluate whether a penalty is excessive by weighing "(1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct." *Viloski*, 814 F.3d at 110; *accord Tsinberg v. City of New York*, No. 20 Civ. 749, 2021 WL 1146942, at *8 (S.D.N.Y. Mar. 25, 2021).

Defendants do not dispute that the Excessive Fines Clause applies.  Assuming that prong is satisfied, the Complaint does not sufficiently allege that the fines here are "grossly disproportional" under the Eighth Amendment.  Each of the factors for evaluating whether fines are excessive favors dismissal of this claim.  By parking an unaltered truck with commercial plates in a commercial parking space, Plaintiffs came precisely within "the class of persons for whom" these rules were designed.  *Viloski*, 814 F.3d at 109.  As discussed above, the amounts of the fines fell within the modest statutory limits.  *Id.*  The violations at issue are not particularly serious, and the harm caused not particularly grave, in relation to other offenses, as reflected in the modest penalties.  *Id.*  "[J]udgments about the appropriate punishment for an offense belong in the first instance to the legislature," and the Complaint has not alleged any reason to second-guess that judgment here.  *See United States v. Bajakajian*, 524 U.S. 321, 336 (1998).

### D.    Unreasonable Seizure

Plaintiffs' unreasonable seizure claim is dismissed because, even assuming a seizure occurred in the form of fines assessed against Plaintiffs or the threatened seizure of their truck, the Complaint does not sufficiently allege that the seizure was unreasonable.[1]  The Complaint's

---

[1] Contrary to Defendants' argument, Plaintiffs have standing to challenge the City's assessment of fines backed up by the threat of property seizure.  Plaintiffs suffered a monetary injury that is

allegation that the seizure was unreasonable because the underlying tickets were "illegal" is insufficient to state a claim for the reasons discussed in Part III.A.2 above.

### E.    Equal Protection

Plaintiffs' equal protection claim is dismissed because each of the distinctions drawn by the City's parking rules at issue is rationally related to a legitimate government objective and does not implicate either fundamental rights or suspect classifications.[2]

In addition to the Complaint's challenge to the City's policy of exempting vehicles bearing a "nationally recognized logo," Plaintiffs reframe several other arguments as equal protection claims in opposition to the Defendants' motion, including arguing that it is irrational to require identifying lettering on commercial vehicles and to engage in "ticket stacking" on unaltered vehicles with commercial plates.  As discussed above, Plaintiffs cannot amend their Complaint in this way.

Even if they were included in the Complaint, these allegations also fail to state a claim. Defendants' parking rules distinguish only who may park in commercial parking spaces.  This distinction does not affect any fundamental right, and distinguishing among commercial and non-commercial vehicles does not involve a suspect classification.  Defendants' parking rules are

---

traceable to the City's parking enforcement program for which Plaintiffs seek monetary relief. *See McMorris v. Carlos Lopez & Associates, LLC*, 995 F.3d 295, 300 (2d Cir. 2021) (requiring pleading of "an injury in fact that is concrete, particularized, and actual or imminent," "was caused by the defendant" and "would likely be redressed by the requested judicial relief").

[2] Contrary to Defendants' argument, the Complaint adequately alleges that Plaintiffs have standing to challenge the only such distinction alleged in the Complaint -- the City's policy of exempting vehicles bearing a "nationally recognized 'logo'" from their lettering requirement. Plaintiffs' truck was ticketed, in part, because of its non-compliance with that lettering requirement.  Plaintiffs thus assert their own rights, not "the rights or legal interests of others." *N.Y. State Citizens' Coalition for Children v. Poole*, 922 F.3d 69, 75 (2d Cir. 2019).

thus subject to rational basis review and easily satisfy that standard. *See Green*, 16 F.4th at 1078 ("Because the relevant distinction . . . does not implicate a suspect class or a fundamental right, it is subject to rational basis review and will be upheld if it 'bears some rational relationship to a legitimate state interest.'").  Defendants have a legitimate interest in readily identifying commercial vehicles, particularly when enforcing parking rules designed to facilitate commercial activity while easing congestion.  The City's exemption of vehicles with easily identifiable, "nationally recognized" logos is also rational.  As discussed above, the City also could rationally conclude that greater deterrence is needed for certain drivers who might be particularly likely to violate the parking rules on commercial-only spaces, and so choose to impose two different rules potentially applicable to drivers with commercial plates.

### F.     Regulatory Takings

Plaintiffs' takings claim is dismissed because Plaintiffs abandoned it by failing to respond to Defendants' arguments for dismissal.  *See Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020) (summary order) ("[D]istrict courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to dismiss stage."); *Stone Fam. Tr. v. Credit Suisse AG*, No. 19 Civ. 5192, 2022 WL 954743, at *9 (S.D.N.Y. Mar. 30, 2022).

In any event, there was no taking because the Complaint does not allege that Defendants deprived Plaintiffs of "all economically beneficial use" of their vehicle, nor that these parking rules "impede[] the use of property." *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942-43 (2017).  The City's rules place modest limits on where Plaintiffs can park, and Plaintiffs are otherwise free to use their truck as they wish.  Even if the City's rules are analyzed under the non-categorical takings framework, none of the factors would indicate a taking. *See id.* ("[W]hen a regulation

impedes the use of property without depriving the owner of all economically beneficial use, a taking still may be found based on 'a complex of factors,' including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action.").  The governmental action at issue is a routine parking rule, which has minimal "economic impact" on Plaintiffs and does not interfere with any alleged "investment-backed expectations."  *Id.*

### G.    Municipal Liability

The municipal liability claims are dismissed because, as discussed, the Complaint does not sufficiently plead any constitutional violation.  The Complaint names as Defendants the City of New York and two city officials in their official capacities.  Claims against the latter are deemed to be against the City.  *Tanvir v. Tanzin*, 894 F.3d 449, 458 (2d Cir. 2018) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."  (internal quotation marks omitted) (quoting *Hafer v. Melo*, 503 U.S. 21, 25 (1991))).  "Municipalities are liable under § 1983 only if the challenged conduct occurred 'pursuant to a municipal policy or custom.'"  *Green*, 16 F.4th at 1077.  To prevail on such a claim, "a plaintiff must plead and prove that his constitutional rights were violated . . . ." *Edrei v. City of New York*, 254 F. Supp. 3d 565, 579 (S.D.N.Y. 2017) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)); *accord Legg v. Ulster Cnty.*, 979 F.3d 101, 114 (2d Cir. 2020) ("[S]he needed to demonstrate 'an official policy of the municipality caused [her] constitutional injury . . . ."  (alteration in original)).  Because the Complaint does not plead a constitutional violation, there is no need to consider whether Defendants acted pursuant to official policy or custom.

H.    **State Claims**

In addition to the federal constitutional claims, the Complaint asserts claims under analogous provisions of the New York constitution governing excessive fines, due process, and taking of property.  *See* N.Y. Const. art. I §§ 5-7.  Because Plaintiffs' federal claims are insufficiently pleaded, the Court declines to exercise supplemental jurisdiction over the state claims.  *See Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 62 n.9 (2d Cir. 2021). "The district courts may decline to exercise supplemental jurisdiction" if "the claim raises a novel or complex issue of State law" or "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(1), (3).  In exercising its discretion, "the district court must weigh various factors, such as judicial economy, convenience, fairness, and comity." *Wright v. Musanti*, 887 F.3d 577, 582 n.2 (2d Cir. 2018).  In general, "if a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'"  *Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010); *accord Calcano v. True Religion Apparel, Inc.*, No. 19 Civ. 10442, 2022 WL 973732, at *7 (S.D.N.Y. Mar. 31, 2022).  Because this case is at a very early stage, with no discovery having occurred, considerations of judicial economy and convenience favor dismissal.

IV.   **Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  Plaintiffs' claims are dismissed, including inasmuch as they seek declaratory relief.  Although the Court does not believe that any amendment would make the Complaint viable, Plaintiffs nevertheless may seek leave to amend no later than June 16, 2022 by filing a letter motion explaining how the deficiencies identified in this opinion can be cured and appending to the letter a proposed Amended Complaint marked to show changes from the current Complaint.

21

The Clerk of Court is respectfully directed to close the motions at Docket Numbers 18 and 26.

Dated:  June 2, 2022
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**